Harold E. ALVEREZ, Plaintiff-Appellant Cross-Appellee,

v.

J. RAY McDERMOTT & CO., INC., Defendant-Appellee Cross-Appellant.

No. 80–3836.

United States Court of Appeals, Fifth Circuit.

May 5, 1982.

James A. McCann, New Orleans, La., for plaintiff-appellant, cross-appellee.

McGlinchey, Stafford & Mintz, John E. Galloway, Elizabeth A. Alston, New Orleans, La., for defendant-appellee, cross-appellant.

Before BROWN, GEE and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Plaintiff Harold E. Alverez sued his employer, J. Ray McDermott & Co. (McDermott), for injuries sustained while working aboard the Lay Barge 22. Appealing a judgment based on a jury verdict in his favor, Alverez complains that the jury's answers to special interrogatories are inconsistent and that the damage award should be increased for maintenance and cure. McDermott has filed a cross-appeal, asserting that the damage award designated by the jury is a gross figure that should have been reduced by the District Court for the percentage of Alverez' negligence fixed by the jury. McDermott also challenges Alverez' right to raise on appeal the issue of inconsistent jury findings. Having determined that the interrogatories are not inconsistent and that the damage award, already diminished for the plaintiff's negligence, includes maintenance and cure, we affirm.

### I. *Facts*

Harold Alverez was employed by McDermott as a member of the crew of the Lay Barge 22. On Alverez' first day back after treatment for a sinusitis condition, he was assigned duties at the forwardmost bow "imprep" station, located on a pipe rack fourteen feet above the port side bow deck. At approximately 5:30 p. m., the dinner meal was called. There were four methods of egress to reach the galley area from Alverez' work station—two stairwells, a gangway, and a walkway across the pipe rack. All of these, according to Alverez, were obstructed or dangerous. Alverez chose to go across the pipe rack, a route utilized frequently by many of the crew, as well as supervisory and safety personnel. Unfortunately, Alverez was not successful in navigating his way across the pipe to the galley and fell from the pipe rack to the deck fourteen feet below, injuring his back, side and head. This fall resulted in a back injury which has kept Alverez from returning to heavy types of employment.

Alverez brought suit against his employer under the Jones Act and General Maritime

Law, claiming that his injuries resulted from the negligence of McDermott and unseaworthiness of the Lay Barge 22. He also sought to recover maintenance and cure. At trial, Alverez presented evidence that the passageways were cluttered and dangerous and that the pipe route, the only unobstructed path, was often used by supervisory and safety personnel. Alverez also attempted to demonstrate that McDermott was operating with a short crew, the result being that although Alverez was feeling ill on the day of the accident, he was asked to "stick it out." McDermott presented testimony that contradicted Alverez concerning whether the passageways were obstructed. McDermott also established that Alverez, on the day of the accident, in violation of the employer's regulations, had failed to notify the medic on board the barge that he was taking prescribed medicine at the time which could cause drowsiness.

The case was submitted to the jury under F.R.Civ.P. 49(a) with a general charge and five special interrogatories covering both Jones Act negligence and unseaworthiness.[1] The jury found that McDermott was negligent (int. 1) but that the Lay Barge 22 was not unseaworthy (int. 2). Further, the jury determined that (i) Alverez was negligent, (ii) his negligence was not a "proximate cause" of his injury but (iii) his negligence was a producing cause of his injuries (int. 3). The percentage that Alverez' negligence contributed to his injuries was found to be 90% (int. 4) and his damages were fixed at $18,000 (int. 5).

Alverez' motion for j. n. o. v. on the issue of maintenance and cure, motion to set aside the jury verdict, and motion for entry of judgment in favor of the plaintiff or in the alternative for a new trial were denied. Following oral argument and submission of memoranda by counsel, the District Court rendered an opinion that the jury figure of $18,000 was a net figure, not subject to diminution by 90% and judgment was entered accordingly.

On appeal, Alverez raises three points of error. First, he asserts that the jury's finding that McDermott was negligent is inconsistent with the finding that the barge was not unseaworthy. Second, Alverez contends that the finding that his negligence produced 90% of his injuries is inconsistent with the finding that his negligence was not a proximate cause of his injury. Finally, he argues that the jury's verdict must be increased because there is no provision in

1. INTERROGATORIES TO THE JURY

1. Was the defendant J. Ray McDermott negligent?

Answer __X__ Yes or _____ No

If the answer to question No. 1 is Yes, answer (a).

(a) Did that negligence play any part, however slight, in producing plaintiff's injury?

Answer __X__ Yes or _____ No

2. Was the Lay Barge 22 unseaworthy?

Answer _____ Yes or __X__ No

If the answer to question No. 2 is Yes, answer (a).

(a) Was that unseaworthiness a proximate cause of Plaintiff's injury?

Answer _____ Yes or _____ No

If the answer to question No. 1(a) *or* question No. 2(a) is Yes, answer question No. 3.
If the answers to questions Nos. 1 and 2 are BOTH No, or if the answers to questions Nos. 1(a) and 2(a) are BOTH No, have the foreperson date and sign this form and return it to the Court.

3. Was the plaintiff Mr. Alverez negligent?

Answer __X__ Yes or _____ No

If the answer to question No. 3 is Yes, answer (a).

(a) Was that negligence a proximate cause of his injury?

Answer _____ Yes or __X__ No

If the answer to question No. 3(a) is No, answer (b).

(b) Did that negligence play any part, however slight, in producing plaintiff's injury?

Answer __X__ Yes or _____ No

4. If the answer to question No. 3(a) *or* question No. 3(b) is Yes, to what degree expressed in percentage did plaintiff's negligence contribute to his injuries?

_____ 90% _____ %

5. If the answer to question No. 1(a) *or* question No. 2(a) is Yes, state in dollars the amount of plaintiff's damages.

$ 18,000.00

the damage award for maintenance and cure, penalties, and attorney's fees for "arbitrary and capricious termination" of maintenance and cure. In its cross-appeal, McDermott contends that the $18,000 awarded by the jury represents a "gross" figure that should then have been reduced by the District Court for the amount of Alverez' contributory negligence (90%) to yield the net figure of $1,800. McDermott also maintains that Alverez has waived his right to challenge the consistency of the interrogatories by failing to ask for resubmission at the time the jury returned its verdict.

## II. *Inconsistent Interrogatories*

### A. *Standard of Review*

■ Two of the three asserted errors raised by Alverez concern allegedly inconsistent answers to special interrogatories. We are required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806–07 (1962); *Mercer v. Long Mfg. N. C., Inc.*, 665 F.2d 61 (5th Cir.), *rehearing denied*, 671 F.2d 946 (1982); *Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103, 1106–07 (5th Cir. 1975); *Griffin v. Matherene*, 471 F.2d 911, 915 (5th Cir. 1973). "We therefore must attempt to reconcile the jury's findings, by exegesis, if necessary, before we are free to disregard the jury's verdict and remand the case for new trial." *Gallick v. B&O R. R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618, 627 (1963). *See Morrison v. Frito-Lay, Inc.*, 546 F.2d 154 (5th Cir. 1977); *Gonzales v. Missouri Pacific Railroad Co.*, 511 F.2d 629 (5th Cir. 1975); *R. B. Co. v. Aetna Insurance Co.*, 299 F.2d 753 (5th Cir. 1962). Whenever it is possible to reconcile conflicts, this Court is able to direct "a comprehensive, final disposition to the case without infringing in the slightest upon the inviolate nature of the jury trial and resolution." Brown, *Federal Special Verdicts: The Doubt Eliminator*, 44 F.R.D. 338, 347 (1968).

■ The test for determining whether jury answers to special verdicts are inconsistent is well-established in this Circuit.

This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict.... If on review of the District Court's judgment we find that there is no view of the case which makes the jury's answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew.

*Griffin*, 471 F.2d at 915 (citations omitted). *See also Mercer, supra; Guidry v. Kem Manufacturing Co.*, 598 F.2d 402, 408 (5th Cir.), *rehearing denied*, 604 F.2d 320 (5th Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Willard v. The John Hayward*, 577 F.2d 1009 (5th Cir. 1978). In attempting to reconcile special verdicts, our constitutional mandate to create consistency requires that we look beyond the face of the interrogatories to the court's instructions as well. *Mercer, supra; Griffin, supra; McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 59 (5th Cir. 1961).

■ McDermott attempts to foreclose entirely any review upon appeal of the inconsistency of the answers to the interrogatories. McDermott would have us hold that the failure to request resubmission to the jury prior to its discharge results in a waiver of the party's subsequent right to complain of the inconsistent special verdicts. Neither F.R.Civ.P. 49(a) nor the law of this Circuit has established any such rule of waiver and we decline to do so in this case. That this Circuit has never adopted such a waiver rule in cases with special interrogatories under F.R.Civ.P. 49(a) is made quite

clear in our opinion in *Mercer v. Long Mfg. N. C., Inc.*, 671 F.2d 946 (5th Cir. 1982) (denial of petition for rehearing).[2]

### B. *Negligence and Unseaworthiness*

The first asserted inconsistency is between the finding of negligence (int. 1) and the finding of no unseaworthiness (int. 2). Alverez argues that *all* of the elements of negligence that he proved at trial also established the unseaworthiness of the vessel, demonstrating that the work environment aboard the barge was unsuitable for its intended purpose and was unsafe. Therefore, if the jury found that McDermott had been negligent in allowing the unsafe condition to exist, then logically the jury should have also found the barge to be unseaworthy. Alverez reasons that since the jury impliedly found in favor of him on the factual issues of obstruction of passageways and sufficiency of crew, as a matter of law, the negligent operations of McDermott created an unseaworthy vessel. In this approach the alleged inconsistency appears not from the face of the interrogatories but through an examination of the evidence supporting the answers.

■ We find this argument without merit. Jones Act negligence and unseaworthiness are two separate and distinct claims. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971); *Mitchell v. Trawler Racer*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, 948 (1960). Individual acts of negligence do not necessarily create the condition of unseaworthiness "To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions." *Usner*, 400 U.S. at 500, 91 S.Ct. at 518, 27 L.Ed.2d at 567 (footnote omitted). The jury in this case was separately and specifically charged on the distinct issues of negligence and unseaworthiness.

■ Alverez presented evidence at trial of several grounds upon which a finding of negligence might be based, including obstructed passageways, shorthanded crew, and improper behavior of supervisory personnel in walking along the pipes. Thus it was possible for the jury to find negligence on the part of McDermott based on one or more theories and yet find that the barge was seaworthy. For example, the jury could have determined that the passageways were not obstructed and therefore the barge was not unseaworthy, but that McDermott was negligent in allowing supervisory personnel to engage in the habit of walking on the pipes. We do not attempt to discern conclusively which theories were credited and which were rejected by the jury, but only point out that within the context of the trial and in light of the charges on both unseaworthiness and negligence, the jury's answers do represent a logical and consistent decision.

### C. *Proximate Cause and Contributory Negligence*

■ The second alleged inconsistency is between the finding that Alverez' negligence was not a proximate cause (int. 3(a)) and the finding that his negligence contributed 90% to his injuries (int. 4). Considering the distinct substantive standards which we discuss at length, the analyses would regard the inconsistency on the basis of underlying evidence rather than a conflict on the face of the interrogatories and their answers. We assume, without deciding, that this sort of inconsistency is properly challengeable. While Alverez' argument that a finding of no proximate cause is inconsistent with a finding of 90% contributory negligence has superficial appeal, we find that the jury's answers, when viewed in the context of the charge given by the

2. In the instant case, the inconsistencies in the special interrogatories, at least the findings of no proximate cause and 90% negligence, in light of the court's general charge, were not so blatant that the parties would have immediately perceived while the jury was present that a judgment could not be entered upon them.

District Court,[3] represent a logical decision. *R. B. Company*, 299 F.2d at 758.

The District Court made clear to the jury, in both the construct of the interrogatories and the general charge, that there were two separate theories of liability, Jones Act and unseaworthiness, with two different standards of proof of causation.[4] The "producing cause" standard, that used for Jones Act negligence, is the FELA lax standard, incorporating any cause regardless of its immediacy. Plaintiff's burden of proving cause is "featherweight," *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977), and all that is required is a showing of "slight negligence," *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 361 (5th Cir. 1980). In keeping with this less demanding standard of proof and causation, the test for sufficiency of evidence in a Jones Act case also requires less evidence to support a finding, and directed verdicts and j. n. o. v. motions are granted "only when there is a complete absence of probative facts" to support a verdict. *Lavender v. Kurn*, 327 U.S. 645, 652–53, 66 S.Ct. 740, 743, 90 L.Ed. 916, 922 (1946) (construing standard for FELA—Jones Act cases, *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511, 513 (1957)); *Kendrick v. Illinois Central Gulf Railroad Co.*, 669 F.2d 341, 343 n.1 (1982); *Comeaux v. T. L. James & Co.*, 666 F.2d 294, 298 n.3 (5th Cir. 1982); *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 359–60 (5th Cir. 1980).[5] Like-

**3.** The District Court gave the following charge on causation:

Now, we must consider the matter referred to in the law as "causation." Although negligence or unseaworthiness may exist when an accident happens, it does not follow necessarily that that negligence or unseaworthiness caused the accident. The law does not recognize only one cause of an injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause an injury, and in such a case, each may be a cause.

A different rule applies to proof of causation under the Jones Act than the rule applicable to a claim of unseaworthiness.

Under *the Jones Act*, which is the first causation stated by the plaintiff, an injury or damage is considered caused by a negligent act, or negligent failure to act, whenever it appears, from a preponderance of the evidence in the case, that the *act or omission played any part, no matter how small*, in *bringing about* or actually causing the injury or damage.

However, with respect to an *unseaworthiness claim*, an injury or damage is considered caused by unseaworthiness of a vessel whenever it appears from a preponderance of the evidence in the case that the *unseaworthiness was a proximate cause of the injury*. Proximate cause means: first, that the unseaworthiness or the negligence *played a substantial part* in bringing about or actually causing the injury; and *two*, that the *injury was either a direct result* of a *reasonable probable consequence* of the *unseaworthiness* or negligence.

As to the claim of unseaworthiness, the law of damages is not concerned with the effect or remote causes, but only those which *play a substantial part* in bringing about or actually causing the injury and those which naturally flow from the unseaworthiness or the negligent act.

(emphasis supplied)

**4.** The issue of proximate cause assumes special significance in seaman's personal injury litigation because different standards of causation are applied depending on whether the action is for unseaworthiness and/or Jones Act negligence; the separate standards must be employed to determine whether one or both aspects of the case should be submitted to the jury, and the jury must then be instructed as to each remedy's individual rule of causation. An action based on unseaworthiness will normally present no problem for the judge since he need only instruct the jury in traditional common law proximate cause: the act or omission must be a "cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of, and without which it would not have occurred." The burden on the plaintiff of proving causal negligence under the Jones Act, however, is considerably lighter; the Act does not exclude liability for remote damages: the ship owner will be held liable if his 'negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' It is in failing to take account of this distinction that the trial judge can easily commit reversible error.

1B *Benedict on Admiralty* § 28 at 3–162–166 (7th ed. 1980).

**5.** This standard is distinctly different from the *Boeing* "reasonable minds" test applied to unseaworthiness claims. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). *See* note 7 *infra*.

wise, we have applied the same FELA standards of proof, causation, and review of a plaintiff's negligence to that of contributory negligence. *See Campbell v. Seacoast Products, Inc.*, 581 F.2d 98, 99 n.2 (5th Cir. 1978) (applying *Lavender* standard of review to Jones Act case whether jury verdict favors plaintiff or defendant)[6]; *McBride v. Loffland Brothers Co.*, 422 F.2d 363, 365 (5th Cir. 1970) (applying *Lavender* test to sufficiency of evidence of contributory negligence); *Page v. St. Louis Southwestern Railway Co.*, 349 F.2d 820, 822-24 (5th Cir. 1965) (FELA case applying single standard of proximate causation to employer and employee negligence). *See also Weese v. Chesapeake & O. Ry. Co.*, 570 F.2d 611, 615 (6th Cir. 1978); *Dixon v. Penn Central Co.*, 481 F.2d 833, 835 (6th Cir. 1973); *Fleming v. American Export Isbrandtsen Lines, Inc.*, 451 F.2d 1329, 1331 (2nd Cir. 1971). Thus the interrogatory on Jones Act negligence specifically asks if McDermott's negligence played any part "however slight, in *producing* plaintiff's injury" (emphasis added). The complementary interrogatory concerning Alverez' negligence correctly uses the "producing" cause standard (int. 3(b)). It is clear that the jury, utilizing equal Jones Act standards for both seaman and employer, found under the Jones Act that McDermott was negligent and that Alverez was also negligent. In a separate question (int. 4), the jury established that Alverez' negligence had *contributed* 90% to his injury.

The standard of causation for unseaworthiness is a more demanding one than that for Jones Act and requires proof of proximate cause, that is a direct and substantial cause.[7] The jury found that the barge was not unseaworthy. And not inconsistent with this and in light of the instructions given, see note 3 *supra*, they found Alverez' negligence not to be a proximate cause of his injuries (int. 3(a)).

Given our constitutional mandate to find consistency where reasonably possible, we find that the determination of no proximate cause and 90% contributory cause are reconcilable. First, the interrogatory on Alverez' negligence (int. 3) is not inconsistent. The jury found causation on Alverez' part under the lax Jones Act *producing* cause standard but not under the more exacting unseaworthiness *proximate* cause standard. Thus the jury determined that Alverez' negligence, while not immediate enough or direct enough to equal proximate cause, contributed even if only remotely to the extent of 90% to the injury. Second, since the jury was carefully charged on the two theories of liability and their separate standards of causation, the jury, we are entitled to assume, understood that if it found no unseaworthiness, the question of Alverez' negligence being a proximate cause with respect to such situations was basically superfluous. Their concern was only with *producing cause*, having found Jones Act negligence enough. Their answer to int. 4 (concerning the percentage that Alverez' negligence *contributed* to his injuries) was reached in light of the instructions on producing cause, that is "any part, however slight." While it would have been preferable for the District Court to have constructed the interrogatories so that the issue of Alverez' contributory negligence, under each standard, followed the appropriate theory of McDermott's liability (i.e., so that the order would be int. 1, 3(b), 4; 2, 3(a), 4), we have no difficulty in holding that the answers, when viewed along with the instructions, represent a logical and probable decision on the relevant issues as submitted. In fact, the interrogatories, as constructed, and the charge, as given, carefully distinguish between the separate theories of liability and their applicable standards of causation.

**6.** *Cf. Allen v. Seacoast, supra*, at 360 & n.9 (not deciding if FELA standard applies to directed verdicts against a seaman).

**7.** The test for sufficiency of evidence in an unseaworthiness claim is likewise more exacting, utilizing the *Boeing* standard. *Comeaux v.*

*T. L. James & Co.*, 666 F.2d at 298 & n.3; *Allen v. Seacoast Products, Inc.*, 623 F.2d at 359; *Claborn v. Star Fish & Oyster Co.*, 578 F.2d 983, 987 (5th Cir. 1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1281, 59 L.Ed.2d 494 (1979).

■ Nor can we accept Alverez' contention that the finding of 90% contributory negligence is based on an improper determination by the jury that Alverez "assumed the risk" of walking on the pipe. The jury was properly instructed that assumption of the risk is not a defense [8] and we have no reason to believe that the jury disregarded this instruction. It was certainly possible under the various theories of negligence for the jury to find that McDermott was negligent and that Alverez was 90% contributorily negligent without finding that Alverez assumed the risk of climbing on the pipe. For instance, the jury could have found that McDermott's Jones Act negligence was in not instructing Alverez not to walk on the pipes but that Alverez' contributory negligence was in the manner he traversed the pipes or in the failure to inform the medic on board that he was taking medication which caused drowsiness. The determination that McDermott was negligent is not necessarily a determination that there were no alternative routes to the galley or that Alverez had no choice but to walk across the pipe.

8. The District Court gave the following instruction on assumption of the risk:
   A person acting in the service of a vessel, who is properly aboard the vessel to do his job, cannot legally be considered to have voluntarily assumed the risk that the vessel might in any respect be unseaworthy, even if the unseaworthy, dangerous or unsafe condition is known by, or obvious to, him.
   In giving instructions on the Jones Act claim, the District Court gave the following instructions concerning contributory negligence:
   A seaman does not have the same control over his work conditions as a person who works on land. He must, to a certain degree, accept conditions as they are. Therefore, he is not obligated to devise a safer method of doing the work and he is not obligated to call for additional or for different equipment. A seaman's duty is to obey and to do his work as he is instructed.
   On the other hand, if a seaman is provided with a safe way to work and he chooses to do something in way that he knows or should know to be unsafe and dangerous, his employer is not responsible for the results of a choice made knowingly by the seaman.
   Therefore, if you find that the plaintiff, Mr. Alverez, did what he was told to do by the defendant and was not at fault himself, you

### III. Maintenance and Cure

Alverez' final contention is that the award for damages should be increased to reflect recovery for maintenance and cure, and damages, penalties and attorney's fees for "arbitrary and capricious termination" of these benefits. Alverez asserts that the jury's lump sum damage award did not include maintenance and cure. In the alternative, if the award included such an amount, Alverez maintains that this figure was improperly reduced 90% for Alverez' contributory negligence. Prior to trial, Alverez brought a motion for summary judgment on the issue of maintenance and cure, and damages, penalties, and attorney's fees for arbitrary and capricious termination of these benefits. At the hearing on the motion, the District Court denied the motion because the trial was set for approximately two weeks in the future and because the fact of the accident was contested. While the judge indicated at that time that he was sympathetic to Alverez' argument, he in no way indicated that maintenance and cure would not be included in the impending jury trial.[9]

are not to find him negligent. On the other hand, if you find that the plaintiff chose to use an unsafe method in violation of instructions, and that he knew or should have known it was unsafe, you may find he was wholly or partly responsible for what happened.

9. At the conclusion of that hearing, Judge Arceneaux stated to the attorney for McDermott:
   THE COURT: Let me tell you something Mr. Galloway. This cause is set for trial on the 16th of June and McDermott has contested whether or not there was in fact an accident.
   MR. GALLOWAY: yes, sir.
   THE COURT: Also alleged that it was willful misconduct on the part of the plaintiff. I don't mean to pre-judge it, but I certainly don't think much of that contention.
   If this matter were not fixed for trial on June 16, I'd be very, very inclined to award this man maintenance back to April 1978, or thereabout. Because we are so close to trial, roughly two weeks away and because there is such a contested fact, I'm not going to run the risk of having my summary judgment reversed across the plaza. But I want you to know that on the 16th of June, the 17th and the 18th, whatever time it takes to get that jury back, if there is a jury verdict in favor of

At the subsequent trial, the jury was clearly charged on the issues of maintenance and cure and arbitrary and capricious termination of these benefits.[10] In fact, the plaintiff at trial specifically objected to the District Court's form of instructions on maintenance and cure and the Court's failure to give its proposed instructions. We find nothing wrong with the District Court's instructions. Nor do we agree with Alverez' position that if the damage award included maintenance and cure, the jury improperly reduced the maintenance and cure award by the percentage of Alverez' negligence. The judge carefully charged the jury that maintenance and cure was not to be reduced for negligence on the part of Alverez.[11] While Alverez objected to the

Mr. Alverez insofar as this accident is concerned, I'm going to relish awarding maintenance back as far as I can award it back, with interest and attorney's fees, and any other declaration I can hang on it. I'm convinced that J. Ray McDermott terminated this man from employment because he hired a lawyer, terminated his supplemental $11 a day, because he hired a lawyer and terminated, I think, his maintenance because he hired a lawyer. To me that is unconscienable, where you put a man on the street simply because he exercises a right he has. If that jury comes back with a verdict for Mr. Alverez insofar as the accident is concerned, I am going to enjoy thoroughly hanging around J. Ray McDermott every dollar I can hang on them for maintenance.

**10.** The District Court stated:

Now, let's talk a second about maintenance and cure. Maintenance and cure includes two separate items. The obligation of "maintenance" refers to the duty of the owner of a vessel to supply an injured or sick seaman with food and lodging when he is unable to work due to an injury or disease that has occurred while the seaman was in the service of his ship. The term "cure" means the owner's obligation to furnish nursing and medical attention for that kind of injury.

\* \* \* \* \* \*

The adequate protection of an injured seaman against suffering and want requires more than the assurance that he will receive payments at some time in the indefinite future. Payments must be promptly made at a time close to the illness or injury. An employer who fails to pay maintenance that is owed to a seaman, and does so arbitrarily or capriciously or with callous disregard for the claim subjects itself to penalties for such failure. "Arbitrarily" means to do something without any reason. "Capriciously" means to do something without a rational reason. The penalties for arbitrary or capricious failure to pay maintenance are money damages for any prolongation or aggravation of the physical injury suffered by the seaman; and for expenses incurred by the injured seaman; and for expenses incurred by the injured seaman to hire a lawyer to prosecute his claim for maintenance.

An employer is not obliged to pay maintenance and cure to a seaman merely because the seaman claims an injury. The law imposes on the employer only the duty to investigate the claim in good faith and with reasonable diligence, and then to pay maintenance and cure to the seaman if the results of the investigation justify such payments. But damages are not due merely because the employer fails to pay maintenance and cure even if they are due. Damages are due only if payment is withheld arbitrarily or capriciously or in callous disregard of the claim.

In the event that you decide that the plaintiff should in fact recover maintenance and cure, then you must also consider the separate question whether or not the employer was arbitrary or capricious or acted with callous disregard in failing to make such payments, and hence is liable for damages in addition to the amount due for maintenance and cure.

In resolving this second question, you should consider such matters as the nature and timeliness of the notice that the plaintiff gave of his injury, the nature and amount of information available to and discoverable by the employer, the reasonableness of the investigation by the employer, and in general such other matters as may be shown by the evidence to have any bearing on the question whether the employer was arbitrary or capricious or acted with callous disregard in not paying maintenance or in stopping payments.

If you find that the owner did not act arbitrarily or capriciously in stopping the payments of maintenance, then you may not award any damages or attorneys' fees for its failure to pay maintenance and cure.

**11.** The District Court stated:

The duty of the vessel owner to provide maintenance and cure is imposed by law and, therefore, does not rest upon negligence or culpability on the part of the owner or master. Nor is the duty of maintenance and cure restricted to those cases where the seaman's employment is the cause of the illness or injury. It is due if the seaman is injured or becomes ill at any time while he is in the service of his ship. *Neither maintenance nor cure is to be reduced because of any negligence on the part of the seaman.* (emphasis added).

instructions on maintenance and cure, there was no specific objection to the determination of a lump sum damage award based on the possibility that the jury might improperly reduce the maintenance and cure award. Although Alverez does not raise the issue of a single damage interrogatory in his brief, at oral argument Alverez' counsel indicated that he had objected at the charge conference to the maintenance and cure charge. Alverez' attorney also submitted requested jury interrogatories which did split out the types of damages (lost wages, past and future, pain and suffering, medical expense) and asked whether Alverez was entitled to maintenance and cure, if so from what dates, and whether McDermott had been arbitrary and capricious in failing to pay such benefits.

While it might have been preferable for the District Court to propound interrogatories similar to those proposed by Alverez' counsel and which separated the types of damages, we find that the jury was properly charged that maintenance and cure was not to be diminished for contributory negligence. The total damage award, $18,000, exceeds the amount requested for maintenance and cure.[12] Thus we find no error by the District Court and hold that the damage award included recovery for maintenance and cure. While we cannot determine if the jury also awarded damages for arbitrary and capricious termination of benefits, they were properly charged on these issues and we cannot say that they failed to follow the instructions on this aspect or on the requirement that maintenance and cure may not be reduced for contributory negligence.

## IV. Gross or Net

In its cross-appeal, McDermott contends that the damage award of $18,000 is a "gross" figure rather than a "net" figure. Thus McDermott's position is that the figure must be adjusted for the 90% contributory negligence of Alverez, leaving a final figure of $1,800 for damages. The District Court in a post-trial ruling determined that the $18,000 was a net figure not subject to further diminution for Alverez' contributory negligence. In determining that the award was a net figure, the District Court emphasized its charge to the jury in which it stated "damages shall be diminished by the jury in proportion to the amount of negligence attributable to Mr. Alverez."[13] The District Court proceeded to state: "Since the special interrogatory neglected to restate the above admonition, the Court, in order to remain consistent, and avoid conflicting answers, must reason that the jury reduced plaintiff's damages by ninety percent before filling in the amount of the award." We agree with the District Court that in light of the instructions given and the proof of maintenance and cure, the jury, in accordance with the instructions, diminished its award, other than that amount for maintenance and cure, for the ninety percent contributory negligence of Alverez.

AFFIRMED.

---

12. Alverez, in his brief, indicates that he incurred medical expenses of $6,292.08. He also states: "The amount plaintiff claims to be entitled to for the period of his injury up to the point of his reaching a point of maximum medical cure on May 27, 1980 is $4,655.00. That sum would only be on the basis of days that he would have been off the vessel because we asked for $33,000.00 in lost wages and, as such the request for $19 per day for each day since March 24, 1978 may have been considered a double recovery. However, if no consideration is made for wage loss, the amount of maintenance attributed for each day since injury would be $11,704.80."

13. The District Court also stated, in explaining contributory and comparative negligence:

> [T]he fact that Mr. Alverez was contributorily negligent shall not bar his recovery, but the damages shall be diminished by the Jury in proportion to the amount of negligence attributable to Mr. Alverez.... Written questions will be submitted to you later on for you to answer, and all of this is set out in the questions, so you won't have to try and remember how to work out the comparative negligence.