Michael R. GIBSON, Appellant,

v.

OHIO RIVER TOWING COMPANY, INC., Appellee.

No. 89-CA-1435-MR.

Court of Appeals of Kentucky.

July 27, 1990.

Rehearing Denied Oct. 12, 1990.

James W. Owens, Paducah, for appellant.

William R. Ellis, James B. Harrison, Wood & Lamping, Cincinnati, Ohio, for appellee.

Before HOWERTON, C.J., and DYCHE and MILLER, JJ.

MILLER, Judge.

Michael R. Gibson brings this appeal from a judgment of the McCracken Circuit Court entered upon directed verdict at the close of all evidence. Kentucky Rules of Civil Procedure (CR) 50. On a motion for directed verdict, the question presented is whether upon the evidence presented reasonable minds might differ; if so, the matter should be submitted to the jury. *See Lee v. Tucker*, Ky., 365 S.W.2d 849 (1963).

The facts are these: This is an action filed by Gibson, a crew member of the M/V Red Marvel which is owned and operated by appellee, Ohio River Towing Company, Inc. (Ohio River Towing). On March 20, 1987, Gibson filed his complaint in the McCracken Circuit Court under the Jones Act (46 U.S.C.App. § 688) and general maritime law, alleging that on or about October 11, 1985, he injured himself while in service of the Red Marvel. He was nine-teen years of age at the time. Specifically, he alleges he fell in the shower area of the vessel, the result being that his right hand was cut when it protruded through a nearby plate glass window. To recover for the injuries, Gibson alleges negligence under the Act and unseaworthiness of the Red Marvel. He sought indemnity in the form of compensatory damages for his injuries, together with maintenance and cure.

■ It is only a modest exaggeration to say that as long as men have sailed the seas, there has been a rule of admiralty law imposing liability for maintenance and cure (wages and medical treatment) for a crew member overcome by wound or sickness while in service of the ship.[1] Both ship and owner are at risk; both are liable. This rule is predicated upon the desire to care for those who undertake the hazards of the sea. It has long been recognized that seamen enjoy a special position in court; indeed, they are often spoken of as "wards of the court."

There came a time when seamen were given the right of indemnity in admiralty for injuries sustained aboard ship—beyond maintenance and cure. This right was predicated upon proof of an unseaworthy vessel. Finally, in 1920, Congress passed the Jones Act giving seamen the same rights for personal injury as those enjoyed by railroad workers under the Federal Employers' Liability Act. 45 U.S.C. § 51 *et seq.* The result is that an injured crew member may now sue on the admiralty side of federal court for maintenance and cure and for indemnification for injury based upon unseaworthiness or, on the civil side, under the Act.[2] It seems the primary difference between prosecuting a claim based

1. A seaman's entitlement to maintenance and cure does not depend upon accident while in the course of his duties, but it is sufficient that he become disabled while subject to the call of the ship. *See Bergeria v. Marine Carriers, Inc.,* 341 F.Supp. 1153 (E.D.Pa.1972.)

2. A shipowner is required to furnish a seaworthy vessel, but is not obligated to furnish an accident-free ship. This duty, although absolute, is completely independent of his duty to exercise reasonable care under the Jones Act (46 U.S.C.App. § 688.) *See Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

Admiralty and maritime jurisdiction is laid in the federal courts under U.S. Const., Art. III, § 2. State courts are afforded concurrent jurisdiction under the "saving to suitors" clause. 28 U.S.C. § 1333(1). Also, state courts have concurrent jurisdiction of claims arising under the Act. 46 U.S.C.App. § 688 and 45 U.S.C. § 56.

upon unseaworthiness and one based upon negligence under the Act is that the latter requires that the owner know or reasonably should know of the dangerous condition causing injury, while in the former, liability flows even in absence of such knowledge.[3] The foregoing historical analyses and principles are substantially enunciated in *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), and in the authorities cited therein.

We turn to the case at hand. Gibson predicates his claim upon both unseaworthiness of the Red Marvel and negligence under the Act. The evidence shows he lost his balance after taking a shower and proceeding to the sink to brush his teeth. Attempting to catch himself, he extended his right hand through a plate glass window. He states his balance and footing were lost because of the lurching and swaying of the vessel. In support of unseaworthiness, he offered evidence that a defective shower drain resulted in standing water and thus necessitated his placing a towel outside the stall on which to stand and dry. He shows an absence of handrails or grab bars. In addition, he presents evidence of a slippery tile floor, especially slick on this occasion both from the accumulation of excess water due to seepage around the shower and from oil which had been tracked in from the nearby engine room. He further shows the vessel was equipped with neither nonskid mats nor nonskid flooring in the shower area and that the window was not constructed of shatter-proof glass.

In support of his unseaworthy contention, Gibson relies upon *Alvarez v. J. Ray*

*McDermott & Co., Inc.*, 674 F.2d 1037 (5th Cir.1982), a case having quite similar facts and in which the Court found unseaworthiness as a matter of law. In that case, the shower area was not equipped with handrails or grab bars for support, or nonskid mats. The seaman slipped and fell when stepping from the shower box onto a soapy tile floor.

■ Ohio River Towing contended and the trial court apparently believed, to some extent, that *Alvarez* is not controlling because that mishap occurred on the high sea, whereas Gibson's claim arose on an inland river. We deem the distinction to be without merit. Further, Ohio River Towing contended and the court apparently believed, to some extent, that the *Walker*[4] doctrine is fatal to Gibson's claim. We fail to see how this doctrine is applicable in denying unseaworthiness.

While we do not hold that the facts compel a holding of liability that the Red Marvel was unseaworthy as a matter of law, as was the case in *Alvarez*, we do believe there was a submissible issue as to seaworthiness and the trial court was incorrect in entering the directed verdict under CR 50.-01. Moreover, there is evidence from which the jury could reasonably infer that Ohio River Towing, through its officers, knew or reasonably should have known of the defective shower—that the likelihood of injury existed as a result of the slick floor in the shower area—that it failed to take reasonable precautions by installing adequate safety materials and devices. We therefore think there was a submissible issue of negligence under the Act.

On remand, the court should submit the question of unseaworthiness and negli-

---

3. Traditionally, a difference lay in damages recoverable under general maritime law and those recoverable under the Jones Act. 46 U.S. C.App. § 688. For example, all lost earnings and medical expenses are recoverable in a negligence count under the Act, of course, subject to reduction by the seaman's own fault. However, maintenance and cure, in admiralty, provided only for wages to the end of the voyage and medical expenses to the point of incurability. These differences are somewhat obliterated by the practice of joinder of claims arising under

maritime law and the Act into a single action triable by jury. Cf. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) (authorizing trial by jury where seaman joined a claim for maintenance and cure with negligence under the Act.)

4. *Walker v. Lykes Bros. Steamship Co.*, 193 F.2d 772 (2nd Cir.1952) (held a plaintiff may not recover for unseaworthiness for a condition he created or was under a duty to correct.)

gence of Ohio River Towing, together with the question of Gibson's negligence, and permit the jury to reach a comparison of fault.

We now turn to the question surrounding Gibson's entitlement to maintenance and cure. Acting on Ohio River Towing's counterclaim, the trial court determined there had been an overpayment to Gibson on this claim and entered judgment upon directed verdict for Ohio River Towing. Gibson argues that the record does not support a directed verdict on the question of overpayment.

■ In ruling on Ohio River Towing's contention for recoupment, the trial court stated as follows:

THE COURT: The court has under advisement motions for directed verdict from the defendant on several issues and also motions for judgment on [its] counterclaim. And the court rules as follows: That the defense is entitled to judgment on [its] counterclaim for recovery of $3,840.95 for maintenance paid over and above the amount required as a result of the plaintiff living with his mother during the period of time that he was under doctors' care, and cite specifically the case of *Marine Drilling, Inc. vs. Arthur Landry*, 302 F.2d 127 [5th Cir.1962]. In addition the court finds that the defendant is entitled to judgment of this court denying maintenance and cure after the date that the plaintiff failed to maintain his appointment schedule with Dr. Colby under the authority of the *Kossick vs. United Fruit Company*, [365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)]....

The record demonstrates that during Gibson's convalescence, he lived with his mother and stepfather whom he paid $50 per month. Ohio River Towing claims this diminishes his entitlement to maintenance. Further, it contends Gibson voluntarily terminated treatment by his attending physician, thus relieving it from liability for cure. Gibson counters there are "special circumstances" surrounding his living with his mother and stepfather at the inordinately low rate and there is "just cause" for his not keeping medical appointments. Frankly, the record is confusing and unclear. We think, however, there are factual issues surrounding recoupment for maintenance and cure requiring submission to the jury. In *Bergeria v. Marine Carriers, Inc.*, 341 F.Supp 1153 (E.D.Pa.1972), the shipowner filed a counter-claim seeking recovery of maintenance and cure allegedly paid by fraud. It was held the counterclaim presented a question of fact triable by the jury, notwithstanding the general principle that admiralty claims are not so triable.

Reasonable minds may differ as to the merit of Gibson's arguments of just cause and special circumstances. If he had just cause for not keeping medical appointments, then Ohio River Towing may not be entitled to recoupment. *See Kossick*, 365 U.S. at 737, 81 S.Ct. at 891. As to *Landry*, 302 F.2d at 127, cited by the circuit court in denying a portion of Gibson's maintenance claim, we find a factual distinction. In *Landry*, the Court held that a minor not paying room and board and living with his parents, who, by law, were obligated to support him, was not entitled to recovery for maintenance and cure. Obviously, such is not the case at hand, as Gibson's mother and stepfather were not obligated to support him as an adult.

For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.