ON REMAND

liWICKER, Judge.
This is a dispute over partition of pension benefits earned during the parties’ marriage, which comes before us again by remand from the supreme court. At issue is whether the parties’ reconciliation following a 1978 judicial separation reinstated their community of acquets and gains up to their 1992 filing of a petition for divorce.
Thomas Charrier and Patricia Charrier were married in 1963 and were separated judicially in 1978. Sometime thereafter they reconciled and lived together as spouses until 1992, when a petition for divorce was filed which culminated in a judgment of divorce in 1993. During the marriage Patricia Charrier participated in a pension plan through her employer. Following their 1978 separation *984 they executed a community property partition which divided all their community assets except for the pension plan, on which they specifically reserved rights. In conjunction with the 1993 divorce the Charriers again executed a community property partition, in which they again reserved their rights to the pension plan. This appeal arose from their subsequent attempt to apportion their respective interests in the pension plan.
At the time of the Charriers’ judicial separation Louisiana law did not permit automatic reinstatement of the community property regime upon reconciliation. Instead, spouses who reconciled following a judicial separation were required to execute a notarial |2act to reinstate their community. La.Civ.Code art. 155, as amended by Acts 1977, No. 483, § 1, eff. Sept. 9, 1977. Between the 1978 judgment of separation and the 1992 petition for divorce, however, Art. 155 was amended twice. One amendment permitted reestablishment of the community by matrimonial agreement (Acts 1979, No. 711, § 1, eff. Jan. 1, 1980). The second provided for automatic reinstatement of the community unless the spouses executed a matrimonial agreement to the contrary prior to their reconciliation (Acts 1985, No. 525, § 1, eff. Sept. 6, 1985).
In addition to amending Art. 155, however, prior to rendition of the parties’ 1993 divorce decree the legislature again changed the law. Act 1009 of 1990 repealed La.Civ.Code art. 155 and enacted in its place La.R.S. 9:384. As created thereby, La.R.S. 9:384 provided for automatic reinstatement of the community upon reconciliation and made the act retroactive for spouses who were judicially separated by a judgment signed before January 1,1991. Acts 1990, No. 1009, § 7, eff. Jan. 1, 1991.[1]
The trial judge in this ease interpreted La.R.S. 9:384 to apply only to those spouses who obtained a judgment of separation before January 1,1991 and who reconciled after January 1, 1991. Accordingly, he ruled that the only portion of the pension that was community property was that acquired prior to the 1978 separation.
We reversed, finding the trial court erred in holding that La.R.S. 9:384 applied only to reconciliations occurring after January 1, 1991. We held that La.R.S. 9:384 applied in this case to provide for automatic re-establishment of the marital community, despite the lack of a matrimonial agreement, and that the parties’ post-1978 reconciliation reestablished their community property regime. Accordingly, we found Thomas Char-rier entitled to a share of Patricia Charrier’s pension benefits from the time he began to participate in the plan prior to the 1978 separation until June 11, 1992, the date the community terminated. Charrier v. ┴3Charrier, 94-921 (La.App. 5th Cir. 4/12/95) 653 So.2d 1356, writ granted, judgment vacated and case remanded, 95-1538 (La. 9/29/95), 660 So.2d 866.
Patricia Charrier sought writs from the supreme court. While her application was pending, the legislature again amended La. R.S. 9:384, making automatic reinstatement of community applicable only to spouses who reconciled after September 6,1985 [2]:
A. If spouses who were judicially separated by a judgment signed before January 1, 1991, or by a judgment rendered in an action governed by R.S. 9:381, reconcile after September 6, 1985, their community of acquets and gains shall be reestablished between the spouses, as of the date of filing of the original petition in the action in which the separation judgment was rendered, unless the spouses execute prior to the reconciliation a matrimonial agreement that the community will not be reestab,lished upon reconciliation. This matrimonial agreement shall not require court approval.
* * * * * *
La.R.S. 9:384, as amended by Acts 1995, No. 1233, § 1, eff. Aug. 15,1995.
*985 That legislative act also stated, “The provisions of this Act are remedial and shall be applied retroactively.” Acts 1995, No. 1233, § 2, eff. Aug. 15,1995.
Several weeks later the supreme court granted writs in this case, stating,
Judgment of the court of appeal is vacated and set aside. Case remanded to that court for reconsideration in light of the 1995 amendment to La.R.S. 9:384(A).
Charrier v. Charrier, 95-1538 (La. 9/29/95), 660 So.2d 866.
An appellate court is obligated to adjudge a case before it according to the law existing at the time of its decision. Segura v. Frank, 93-1271 (La. 1/14/94) 630 So.2d 714, 725. Where the law has changed during pendency of the suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment that was correct under the law in effect when it was rendered. Id. Where the law has changed after the trial court’s decision, the new law’s applicability can be argued for the first time only on appeal. Id.
LThus, we must determine whether the 1995 revision to La.R.S. 9:384 may be applied retroactively to this case because the case was still pending when the law was enacted and the law specifically provided for its own retroactivity.
If the law could properly be applied retroactively, the crucial question would be whether the parties reconciled before or after September 6,1985. As we stated in our original opinion, the record contains no testimony regarding the date the parties reconciled following their 1978 separation. Indeed, the date of their reconciliation was never at issue. The only information regarding the date is statements by the attorneys in their briefs and memoranda, in which they refer to 1980 as the year of reconciliation.[3]
We conclude, however, that applicability of the new version of La.R.S. 9:384 is moot because the parties have made a judicial confession that the community was reinstated. Following their 1993 divorce the Charriers entered into a consent judgment of partition of community property. That judgment, dated June 6,1994, serves as irrevocable acknowledgment that a community of acquets and gains existed between the parties following their reconciliation.
La.Civ.Code art. 1853 provides, “A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact.”
In Jones v. Gillen, 564 So.2d 1274, 1278-1279 (LaApp. 5th Cir.1990), writs denied, 568 So.2d 1080, 568 So.2d 1081, we discussed this issue at length:
[A] party may be precluded from appealing an issue or from contesting a fact if, under LSA-C.C.P. art. 2085, he confessed to or acquiesced in the judgment. Under LSA-C.C. art. 1853 he cannot contest a fact or issue if he has judicially admitted it during the proceedings.
* % ⅜ * * ■ *
| sIn this respect, the confession or acquiescence to preclude an appeal need not be in writing or any particular form; however, it must consist of an admission by a party in the trial court proceedings of the validity of his opponent’s claim in such a way as to leave no issue to be tried. * * * Such admissions have been held to include consent judgments and stipulations by the parties. * * * They generally do not include statements made through necessity to protect a right, where there was no intent to recognize the validity of the other party’s claim based on the circumstances, or where the other party failed to respond to a pleading. * * *
In regard to a judicial confession or admission, [under] C.C. art. 1853 * * *, the statement constituting a judicial admission must be the express acknowledgement of an adverse fact, the effect of which is to *986 waive evidence as to the subject of the admission or to withdraw the matter from issue. * For these effects to be imposed, however, the other party must have been led to believe the fact was not at issue or he must have relied on the statement to his detriment. * * * Otherwise the party making the admission can ■withdraw the statement. * * * [Citations omitted.]
The rendition of the consent judgment of partition fulfills all these requirements. Further, because the judicial confession is indivisible, the reservation of rights to the pension cannot be excluded from the parties’ consent that a community regime existed. Cf. Vest v. Vest, 579 So.2d 1190, 1192 (La.App. 5 Cir.1991) (“When the original alimony judgment is consented to by the obligor spouse, such consent is tantamount to a judicial admission of the obligee spouse’s right to receive alimony, i.e., of her freedom from fault and her necessitous circumstances.”).
Although our reasoning in this opinion on remand differs from the reasoning in our original opinion, the result is the same and we reiterate our previous decree:
Judgment is now rendered in favor of Thomas Charrier recognizing his entitlement to a portion of Patricia Ann Surridge Charrier’s pension plan from the time he began to participate in the plan until June 11, 1992, the date the community terminated upon the filing of the petition for divorce. This matter is remanded for a hearing on the amount due Thomas Charrier as his portion of the pension plan, consistent with the views expressed herein.

REVERSED AND REMANDED.

. In 1990 the legislature abolished the action for judicial separation, effective January 1, 1991. Thus, January 1, 1991 also was the effective date for the 1990 amendments relating to reinstatement of the community regime after reconciliation.

. September 6, 1985 was the effective date of Act 525 of 1985, the legislation which created automatic reinstatement of the community regime.

. e.g., "The exact date of reconciliation is unknown but the date was no later than 1980, the date offered by counsel for Mrs. Charrier.” Original Brief on Behalf of Thomas Charrier, filed 12/16/94, p. 1, n. 1.