IzGONZALES, Judge.
This appeal arises out of a suit for damages under the Jones Act and general maritime law.
FACTS
Plaintiff Joseph Vendetto, was employed as a seaman aboard the M/V DISCOVERER 534, which was owned and operated by defendant, Sonat Offshore Drilling Co. (Sonat). On or about January 19, 1993, Mr. Vendetto was assisting with a routine maintenance procedure on an engine in a thruster aboard the DISCOVERER 534 when he suffered a neck injury.
On January 10, 1994, Mr. Vendetto filed the instant suit for damages against Sonat, setting forth two theories of recovery, namely Jones Act negligence and unseaworthiness of the DISCOVERER 534, and seeking general damages, lost wages and other special damages, and maintenance and cure. Sonat answered Mr. Vendetto’s petition, generally denying the allegations and alleging that Mr. Vendetto was comparatively negligent.
After a trial on the merits, the trial judge determined that Sonat was negligent and that the DISCOVERER 534 was unseawor-thy. The trial court awarded Mr. Vendetto damages of $1,048,768.00, which represented general damages of $300,000.00 and special damages in the amount of $748,768.00, together with legal interest from date of judicial demand.
*245 From this adverse judgment, Sonat appeals, assigning the following errors:[1]
1. The trial court erred in its implicit finding of fact that the plaintiff was injured while lowering a chain fall.
2. The trial court erred in concluding that there was negligence under the Jones Act.
3. The trial court erred in concluding that the vessel was unseaworthy.
4. The trial court erred in failing to allocate any fault to the plaintiff.
5. The trial court erred in permitting Robert Kubelka to give expert testimony on the safe manner of performing this task assigned to the plaintiff.
136. The trial court erred in awarding $1,048,768.00 in damages, improperly assessed pre-judgment interest on that sum, and failed to give defendant credit for certain benefits and advances to plaintiff.
Mr. Vendetto also filed a motion and order for devolutive appeal in which he challenged the failure of the trial court to award interest from the date of the accident. This issue was not briefed and, therefore, is considered abandoned. Uniform Rules, Louisiana Courts of Appeal, Rule 2-12.4.
STANDARD OF REVIEW
The standard of review in Jones Act and general maritime eases is governed by state law. See Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1155 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
JONES ACT NEGLIGENCE
There was some dispute as to how the accident occurred. Mr. Vendetto said that he injured himself as he was lowering a chain fall (weighing between thirty and forty pounds) during the course of a 6000-hour SAM — Sonat automated maintenance, a routine maintenance procedure which was performed at every 6000 hours of operation.
This case is very similar to Rogers v. Eagle Offshore Drilling Services, Inc., 770 F.2d 549 (5th Cir.1985) (per curiam). In Rogers, the plaintiff was pulling a steel drilling cable off of the drawworks drum. The court held in Rogers:
We reiterated the Court’s previous holdings that the failure to use an available method to accomplishing the same work does not render a given method of performing the work unsafe.
770 F.2d at 550. In Rogers, the plaintiffs safety expert testified:
There is a principle in safety, first that you always use mechanical means to do a manual task .if you can possibly do it. And there were mechanical means available to do this job. Therefore, I feel that the practice that they were utilizing was unsafe for this reason, because they were not using a mechanical means.
770 F.2d at 550. Nonetheless, the fifth circuit held:
The testimony of [the safety expert] establishes only that a mechanical means of “cutting and slipping” would have been a preferable method. There was no testimony that performing the work manually was, in itself, an unsafe way of performing the job. We therefore hold to our conclusion that there is no Levidence that the use of a manual method ... was unsafe; the testimony the petitioner emphasizes established only that there were probably safer methods.
770 F.2d at 550-51.
The trial court in the instant case found the following facts:
On cross-examination Mr. Vendetto testified that the scaffolding did not extend completely from below the ladder to the edge of the thruster tunnel and that he had to stretch to get across. He admitted that there is a place on the handrail where one can lower the tools without having to worry about obstructions, and that he had lowered tools from that point before. He testified that he had seen and used wraps, but that they were not normally used to *246 lower tools. He admitted that he had sometimes used wraps when lowering tools for a SAM. The witness also said that if a wrap is used, then you can control the load and there is no load on the person lowering the tools. He added, though, that wraps were usually used to hold really heavy things in place. The witness said that he knew that using a wrap was a safe way to lower the tools.
Mr. Vendetto testified that Sonat had self-lifting tapes and safety meetings and placards set out around the rig on safe lifting techniques. The plaintiff said that he saw the placards and that they said to lift with the legs and keep the back straight. He said that was the technique that they had been taught and which he used. They had safety meetings once a week, which he attended, and placards also set out around the rig showing the proper lifting technique.
In rendering judgment in favor of Mr. Ven-detto, the trial court relied upon Spinks v. Chevron Oil Company, 507 F.2d 216, 223 (5th Cir.1975), citing it for the position that “[t]he seaman’s duty to protect himself ... is slight. His duty is to do the work assigned, not to find the safest method of work. This is especially true when his supervisor ... knows the working method used by the seaman and does nothing about it.”
With respect to the nature of the duty imposed on a seaman, Spinks was recently overruled by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 339 (5th Cir.1997). The Gautreaux court found:
A seaman, then, is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman’s employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, under a Jones Act negligence action becomes one of the reasonable seaman in like circumstances. To hold otherwise would unjustly reward unreasonable conduct and would fault seamen only for their gross negligence, which was not the contemplation of Congress.
By ascribing to seamen a slight duty of care to protect themselves from the negligence of their employers, Spinks and its progeny, specifically Brooks [v. Great Lakes Dredge-Dock Company, 754 F.2d 536 (1984)] are repugnant to the principles we espouse today and are therefore overruled. Moreover, by attributing to Jones Act employers a higher duty |5of care than that required under ordinary negligence, Allen [v. Seacoast Products, Inc., 623 F.2d 355 (1980)] and its progeny repudiate the reasonable person standard and are also overruled. (Citations omitted.)
As a general rule, appellate courts are bound to adjudge a ease before it in accordance with the law existing at the time of its decision. Where the law has changed during the pendency of the suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment that was correct under the law in effect when it was rendered. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994); Charrier v. Charrier, 94-921 (La.App. 5th Cir. 3/26/96), 672 So.2d 983, 985, writ denied, 96-1561 (La.9/27/96), 679 So.2d 1345.
We are required to review the facts using the standard of care as articulated in Gau-treaux, as if these legal principles had always been the law. See Norton v. Crescent City Ice Mfg. Co., 178 La. 135, 150 So. 855, 858 (1933).
Mr. Vendetto was a seasoned offshore oil worker, well trained and experienced. Prior to working for Sonat, Mr. Vendetto worked for two years as an assistant mechanic for Louisiana Compressors, where he had to lift and carry heavy objects. He began working for Sonat in 1987, starting as a painter/seaman and was promoted after six months to roustabout, which required him to carry objects weighing up to 100 pounds. He was then promoted to motorman 3, then to motorman 2, then to motorman 1, then to senior motorman, and finally to mechanic 3. During the six years that he worked for Sonat, Mr. Vendetto attended weekly safety *247 meetings. Prior to his injury in 1993, he had worked on two or three 6,000-hour SAMs and had observed others being performed.
The plaintiffs safety expert, Mr. Kubelka, said the method of lowering the chain fall used by Mr. Vendetto would put stress on his back and analogized it to “lifting heavy stuff out of a trunk of a car[.]” However, Mr. Kubelka did not say that this method was unsafe. When asked if the method used was an inappropriate method of performing the assigned task, he answered, “I think it puts more strain on the back than one — than | fialternate methods, Counselor.” Thus, he merely suggested it would be better to use mechanical means to lower the tools.[2]
In this ease, the plaintiff had a duty to exercise ordinary care to protect himself. The corresponding duty of Sonat was ordinary care. In determining fault, the trial court, applying Spinks, imposed a higher duty on Sonat than is required under the Jones Act and, further, imposed a lesser duty on Mr. Vendetto to protect himself than the law requires under Gautreaux.
Mr. Vendetto was undertaking a common, ordinary task which he had done many times before, and he chose the method by which to lower the tools, which weighed no more than forty pounds. The method he chose to use, according to his safety expert, put stress on his back. However, the injury he suffered was not to his back, but to his neck. There was no testimony that the method Mr. Ven-detto used was unsafe, merely that there were other methods which he could have used.
Under the facts of this ease, there was no Jones Act negligence on the part of Sonat.
UNSEAWORTHINESS.
The duty of seaworthiness is absolute and independent of the duty to exercise reasonable care under the Jones Act. The standard is not to provide an accident-free ship; rather, the test to determine if there was an unseaworthy condition is whether the vessel, equipment, or appurtenances were reasonably fit for their intended use. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549-550, 80 S.Ct. 926, 932-933, 4 L.Ed.2d 941 (1960).
The trial court based its finding of unseaworthiness on the following:
This court finds that Sonat’s failure to ensure that the supervisors on board the rig were following and enforcing the proper safety methods, was a condition that made the vessel unseaworthy. If a crew is not properly trained in learning how to do their jobs safely, then there is no doubt that it is a “defective or inadequate crew.” When a vessel’s personnel does not know how to perform their jobs in a safe manner, then it cannot be said that the vessel is reasonably fit for its intended use.
The standard of causation is more demanding in unseaworthiness claims as opposed to negligence claims and requires proof of proximate ^causation. Brister v. A.W.I. Inc., 946 F.2d 350, 354 (5th Cir.1991). Causation in unseaworthiness requires a showing of proximate cause which means that (1) the unseaworthiness played a substantial part in bringing about or actually causing the injury or that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. Alverez v. J. Ray McDermott & Co. Inc., 674 F.2d 1037, 1042-43, see also footnote 3 (5th Cir.1982). This court finds that the failure to properly train Joseph Vendetto on how to safely lift and lower tools played a substantial part in bringing about or causing his injury and that the injury was a direct result of the vessel’s unseaworthiness, i.e. its improperly trained and supervised crew.
Mr. Kubelka did not state that the method used by Mr. Vendetto to lower tools in this case was unsafe. Rather, he felt it would have been better to use mechanical means, such as a hoist, to lower the tools. However, he admitted that the wrap method, which Mr. Vendetto' testified he had safely used before to lower tools during a SAM, could have been used. Mr. Vendetto testified, and the trial court found, that Sonat had self-lifting tapes and safety meetings and placards set out with proper lifting techniques shown. The *248 testimony of the other workers, except Mr. Vendetta who could not remember, was that there was a pre-task meeting. The meeting included a drawing of what work needed to be done. The supervisor went over the procedures and instructed the workers as to the tools that would be needed, as well as safety concerns such as oil leaking and the hazards of falling.
Furthermore, Mr. Vendetta’s testimony shows that he had lifted heavier loads many times in the past, that he was aware of proper lifting techniques, and, in fact, he had used them in the past. Under the facts of this case, the trial court committed manifest error in finding that Mr. Vendetta was not properly trained in lifting and that this lack of training made the vessel unseaworthy.
In conclusion, we find that the trial court committed legal error in finding Jones Act negligence on the part of Sonat, and, further, we find that the trial court committed manifest error in its finding of unseaworthiness.
Therefore, for the foregoing reasons, the trial court judgment in favor of Mr. Vendetta and against Sonat is REVERSED. Mr. Vendetta is cast with costs.
CARTER, J. dissents and assigns reasons.
FOGG, J., dissents for reasons assigned by Carter, J.
PARRO, J., concurs.

. Although the opinion does not address each assignment of error individually, the opinion adequately disposes of the issues raised.

. We find no abuse of discretion by the trial court in allowing Mr. Kubelka to testify.