703 So.2d 681 (1997)
Susan WALL, etc.
v.
PROGRESSIVE BARGE LINE, INC. et al.
Wanda Gayle CHERAMIE, et al.
v.
PROGRESSIVE BARGE LINE, INC., et al.
Steven WALL, et al.
v.
PROGRESSIVE BARGE LINE, INC., et al.
Mary Joan WALL
v.
PROGRESSIVE BARGE LINE, INC., et al.
Nos. 97-CA-0665 to 97-CA-0668.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1997.
Rehearing Denied December 30, 1997.
*683 James F. Shuey, Frilot, Partridge, Kohnke & Clements, New Orleans, for Defendant/Appellant ContiCarriers and Terminals, Inc.
Lawrence D. Wiedemann, Brian G. Shearman, New Orleans, for Plaintiff/Appellee Susan Wall.
Thomas M. Discon, Discon Law Firm, Mandeville, for Plaintiff/Appellee Wanda Cheramie, etc.
Russell K. Zaunbrecher, Edwards, Stefanski, Cunningham, Stefanski & Zaunbrecher, Crowley, for Plaintiffs/Appellees Sandra Wall and Steven Wall.
Rebel G. Ryland, McKeithen, Ryland & Champagne, L.L.C., Columbia, for Plaintiff/Appellee Crystal Wall Lyons.
Before KLEES, BYRNES and PLOTKIN, JJ.
BYRNES, Judge.
In this maritime wrongful death action which is a consolidated case, ContiCarriers and Terminals, Inc. ("Conti") appeals the amended judgment awarding damages for the death of Captain Harold Wall from a slip and fall between two barges moored together in the Mississippi River. Susan Wall and Sandra Wall answered the appeal, requesting a review of the apportionment of 40 percent fault allotted to Captain Wall.
Captain Wall was employed by Progressive Barge Line ("Progressive") assigned to the *684 M/V GAZOO,[1] an inland harbor tug used primarily to shuttle barges to and from locations in the New Orleans harbor. At the time of the accident on the night of September 12, 1989 the M/V GAZOO was under charter by Progressive to Conti which operated a barge fleet.[2]
Conti's fleet dock served as a holding area for barges, and Conti also provided a barge repair service and barge cleaning service. The fleet boats such as the M/V GAZOO and their crews positioned barges within those areas.
On the night of the accident Captain Wall was working on the night shift, and he boarded the M/V GAZOO in Marrero and piloted it upriver to Carrollton Avenue where he landed his vessel next to Barge CCT-401,[3] which was tied off adjacent to Barge RTA-9[4] at the repair dock.[5] He instructed the two deck hands to pick up some loose rigging from the barge. Captain Wall left the wheelhouse of his vessel, and was going to pick up his night orders at the Conti's fleet office. Both deck hands as well as Conti's night dispatcher, who was in a third story office located on a nearby dock barge, saw Captain Wall start across the deck of Barge CCT-401. This was the last time Captain Wall was seen alive. Captain Wall was last seen near the center of Barge CCT-401 in an area which was clean, dry and well-lit. He was carrying a cigarette lighter in one hand and papers in the other.
After the two deck hands finished moving the rigging, they went back aboard the M/V GAZOO. They each carried an empty five gallon water jug to be filled on the dock. To reach the dock, they walked across Barge CCT-401 and Barge RTA-9. They filled up the jugs with water and returned to the M/V GAZOO. The deck hands both testified that the deck of Barge RTA-9 was covered with a residue of fertilizer which was slippery.
The evidence showed that scaffolding used to repair Barge RTA-9 created a gap between Barge CCT-401 and Barge RTA-9. The gap was estimated to be 18 to 24 inches at the widest point narrowing to approximately one foot near the scaffolding. Further away from the bow end, the gap narrowed to the point that the barges touched.
On September 14, 1989, Wall's body was found below the Conti fleet floating in the river. He was wearing cowboy boots and no work vest. The pathologist, Dr. James Elston, found that drowning was the cause of death. He found no sign of significant blow or trauma to the head or other parts of Captain Wall's body.
Plaintiffs, relatives of Captain Wall, as well as an individual on behalf of his two acknowledged illegitimate children, filed four wrongful death actions which were consolidated in state civil district court. The defendants included: Progressive, the Jones Act employer of Captain Wall; RTA, the owner, as well as MEMCO, the bareboat charterer of Barge RTA-9, whose condition allegedly caused the accident; and Conti, dock owner, charterer and operator of the fleeting facility, where the barge was moored for repairs to be performed by Conti.
*685 When the defendants filed limitation of liability proceedings in federal court, the state court actions were stayed. In federal district court the claims against MEMCO and RTA were dismissed on summary judgment. That judgment was reversed on appeal, and the federal Fifth Circuit reinstated MEMCO and RTA as defendants.[6] The stay was lifted, and the actions resumed in state district court.
Plaintiffs settled all claims against Progressive and MEMCO prior to trial. On June 17, 1996, the case was submitted upon written evidence to the trial judge without a jury. On September 18, 1996, the trial court awarded $660,000 in damages with fault apportioned as follows: 50 percent to Conti; 40 percent to Captain Wall; and 10 percent to Progressive. In the Reasons for Judgment the trial court noted that the award included $250,000 for general damages for the wrongful death of Captain Wall, and $410,000 for special damages.
Plaintiffs and Conti moved for a new trial which the trial court granted in part on October 16, 1996. In that judgment the trial court increased the total amount of damages to $710,000, which included an increase for conscious pain and mental anguish damages in the amount of $50,000.
On December 12, 1996 the trial court issued an amended judgment with the following awards: $410,000 in damages for the wrongful death of Captain Wall;[7] and $50,000 for the survival action.[8] The amount of $250,000 awarded in general damages was vacated. The apportionment of fault remained the same.[9]
On appeal Conti contests its liability and the percentages of fault allotted to the parties. Conti argues that the plaintiffs failed to establish Conti's negligence and proximate cause by a preponderance of the evidence. Conti asserts that the trial court erred in awarding damages for Captain Hall's predeath pain and suffering. In answering the appeal, the plaintiffs claim that Conti did not prove that Captain Wall was comparatively negligent by a preponderance of the evidence.

Conti's Liability
Conti contends that the trial court erred in: (1) finding that Conti was 50 per cent liable because it had primary control of Barge RTA-9 as Conti was the charterer of the M/V GAZOO, fleet operator, dock owner, and/or was the repairer of Barge RTA-9; and (2) assessing the percentages of fault of Captain Wall and the defendants, Conti, Progressive and MEMCO.
Admiralty claims may be brought in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause; in either case, federal substantive maritime law applies. Antill v. Public Grain Elevator of New Orleans, Inc. 577 So.2d 1039 (La.App. 4 Cir.1991), writ denied 581 So.2d 684 (La.1991). In an admiralty case, the appellate court reviews the district court's findings of fact for clear error and considers all questions of law de novo. Randall v. Chevron, U.S.A., Inc., 13 F.3d 888 (5 Cir.1994), modified on other grounds on rehearing, 22 F.3d 568 (5 Cir.1994), certiorari dismissed, Sea Savage, Inc. v. Chevron, U.S.A., Inc., 512 U.S. 1265, 115 S.Ct. 5, 129 L.Ed.2d 906 (1994). Factual findings made by the trial court in a claim under general maritime law are reviewed under a clearly erroneous standard, which is the same manifestly wrong or clearly wrong standard of review used by the Louisiana appellate courts in reviewing factual findings of lower courts. Mistich v. Pipelines, Inc., 609 So.2d *686 921 (La.App. 4 Cir.1992), writ denied 613 So.2d 996, certiorari denied Brown & Root, Inc. v. Mistich, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though it is convinced that if it had not been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). A court sitting in admiralty apportions damages in accordance with principles of comparative negligence. Vulcan Materials Co. v. Vulica Shipping Co., Ltd., 859 F.Supp. 242 (W.D.La. 1994).
Conti contends that maritime law does not follow land-based principles of custodial or premises liability. Under maritime law, Conti states:
... A ship repairer becomes the bailee of the vessel it agrees to repair, and it is responsible for the physical safekeeping of that vessel while in its custody. A ship repairer also has legal responsibility for the physical safety of its employees while aboard the vessel, a matter that is largely governed by OSHA regulations.
Maritime law does not recognize any other form of "custodial" liability for the condition of a vessel, absent an ownership or operational interest in the vessel itself. Under maritime law, those who own or operate vessels owe a warranty of seaworthiness to the members of the crew, and a duty of reasonable care to all others. [Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312 (5 Cir.1990) cited in footnote.] These duties are non-delegable; that is, the owner or operator cannot transfer the duty to another party, even where "custody" is relinquished. It is settled law that the barge owner's duty to use reasonable care is not eliminated when it relinquishes custody of its vessel to a third-party contract. [Verdin v. C & B Boat Co., 860 F.2d 150, 155-56 (5 Cir.) cited in footnote.] ...
In Bossard v. Port Allen Marine Service, Inc., 624 F.2d 671, 673 (5 Cir.1980), the Fifth Circuit held that the repair service did not have legal liability for the vessel, and that a repair facility "plainly does not have the degree of control over the vessel" that the charterer, the owner pro hac vice or operator has. In the present case Conti argues that it was responsible to its own employees with respect to hazards it was hired to repair, but Conti cannot be held liable for the pre-existing condition of cargo residue on the deck of Barge RTA-9 which was not within the repair area. Conti notes that OSHA regulations establishes standards for shipyard employment and only apply to workers covered under the Longshoremen's and Harbor Workers Compensation Act. However, plaintiffs in the present case point out that evidence of violation of OSHA standards is admissible as evidence of negligence although the Act did not create a private right of action for damages for its violation. Buhler v. Marriott Hotels, Inc., 390 F.Supp. 999 (E.D.La.1974).
In Forrester v. Ocean Marine Indem. Co., 11 F.3d 1213 (5 Cir.1993), the Fifth Circuit found that under Louisiana law, the proprietor who owned both the dock and offshore platform owed no duty of reasonable care in its capacity as platform owner, as time charterer,[10] or as dock owner, to provide an independent contractor, hired to work on the platform, with safe egress from the timechartered crew boat to the dock. The Fifth Circuit found that primary possession and control of the vessel remained with the vessel owner.
Under a traditional time-charter agreement, the vessel owner remains responsible for seaworthiness of the vessel, dangerous conditions on board, navigational error by the pilot, negligence by the crew, and a reasonably safe means of access for those boarding or leaving the vessel; traditional allocation of duties between the employer, platform owner, time charterer, and vessel owner places liability for harm on the party that is most directly responsible for the dangerous *687 condition that caused the harm. Moore v. Phillips Petroleum Co., 912 F.2d 789 (5 Cir.1990).
In Hodgen v. Forest Oil Corp., 87 F.3d 1512 (5 Cir.1996), the platform owner was also the time charterer of the vessel. The vessel's mission was to transport the plaintiff and a co-worker to another platform for meter readings. The plaintiff, who was employed by a third-party contractor, suffered injuries when he attempted to transfer by swinging on a rope from the platform back to the vessel. The appellate court noted that there was nothing dangerous in the swing rope transfer in the abstract; however, the swing rope transfer became dangerous because of the platform owner/charterer's timing in ordering the transfer during rough seas. The Fifth Circuit found that the platform owner had been negligent in its capacity as charterer. Without anything in the time charter to alter the traditional allocation of control over the timing of the mission to the time charterer, the platform owner/charterer had contractual control over the timing of the vessel's mission to transport the plaintiff and a co-worker to another platform for meter readings which gave rise to a hybrid duty on the part of the platform owner as charterer to choose the mode of transfer reasonably. The time charterer/platform owner was 85 percent at fault and the vessel owner was 15 percent at fault.
The Fifth Circuit stated:
... [A] time charterer owes a ... hybrid duty arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control.... [T]he traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment.... Moore and Forrester establish that a time charterer's traditional sphere of control does not extend to providing a safe means of ingress and egress from the vessel absent special circumstances.... The fact that a vessel may owe a duty to a third party over a certain sphere of activity does not necessarily mean that this duty is exclusive. Thus, the fact that a vessel owes a duty to a passenger to provide a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer, if the plaintiff can establish that the accident resulted in part from the decision, such as the timing of the ingress or egress, within the time charterer's control spheres.

Id., 87 F.3d at 1520.
In Verdin v. C & B Boat Co., 860 F.2d 150 (5 Cir.1988), an agent of the tugboat owner, C & B Boat Company ("C & B"), which was the Jones Act employer of the tugboat captain, Albert Verdin, had ordered Verdin to go onto Barge T-13022-B to close the hatch covers which lacked securing devices, which condition was found to be one of the legal causes of Verdin's accident. C & B's mate who remained on the tug did not have a Coast Guard license to operate the tug, but he was at the wheel and opened the throttle, which caused the pulling cable, which ran from the tug to the barge and was attached to the covers, to move, and Verdin lost his balance and fell to his death. The barge was owned by Federal Barge Line. The appellate court affirmed the trial court's findings. C & B, the tugboat owner, was 60 percent liable. The barge owner, Federal Barge Line, who owed a duty of seaworthiness of the barge to Verdin, a passenger, was 30 percent at fault, and Verdin, the deceased, was ten percent at fault. In that case both vessels were found to be unseaworthy. The tugboat owner and the barge owner were both found to be negligent. The federal appellate court noted that there can be more than one legal cause of an accident.
In Woods v. Sammisa Co., Ltd., 873 F.2d 842 (5 Cir.1989), both the time charterer as well as the owner/operator exercised some degree of control over cargo operations so that each could be held responsible for each's own negligence allegedly leading to the injury of a longshoreman while unloading cargo. Neither the time charterer nor the vessel owner/operator was entitled to indemnity from each other.
*688 In the present case Conti was not the primary Jones Act employer of Captain Wall, and Captain Wall was not Conti's longshoreman or dock worker employee; however, under maritime law, although those who own or operate vessels owe a warranty of seaworthiness only to the members of the crew, the vessel owner or operator owes a duty of reasonable care to all others. Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312 (5 Cir.1990), certiorari denied, 499 U.S. 906, 111 S.Ct. 1107, 113 L.Ed.2d 216 (1991). Although Conti was not the vessel owner, Conti, as the dock owner, charterer, fleet operator, and/or repairer still was responsible for its acts of negligence to others, including vessel passengers, and Conti was responsible for avoiding negligent actions within the sphere of activity over which it exercised at least partial control. The issue is whether Conti had sufficient operation or control over the sphere of activity which caused the accident and was therefore liable in negligence to third parties such as Captain Wall for the condition of Barges RTA-9 and CCT-401, which gave rise to the substandard condition.
In the present case Barge RTA-9 was undergoing repairs at the Conti facility because the barge had been damaged previously while being fleeted by a Progressive tug working for Conti. Conti was to repair the barge, and the cost was to be deducted from Conti's payment of the charter hire agreement with Progressive. Barge RTA-9 was moored at Conti's repair dock to be repaired by Conti, and Captain Wall, who was the captain of the M/V GAZOO, which was next to Barge CCT-401 and Barge RTA-9, was going to pick up his instructions from Conti from the Conti facility when the accident occurred. Considering that Conti instructed Captain Wall about his duties, Captain Wall was in the process of picking up his night orders from Conti, Conti was repairing Barge RTA-9, and the CCT-401 was part of Conti's fleet, Conti was acting in its traditional sphere of activity as the charterer and fleet operator who had the authority to give Captain Wall's orders, and the accident occurred when Captain Wall went to obtain Conti's instructions.[11] Conti was acting in its sphere of activity not only as Captain Wall's superior/instructor, but also as the repairer when it did not illuminate the repair area or mark off the area with barricades or yellow safety tape on Barge RTA-9. Further, Conti had opened the gap between the barges for scaffolding to make the repairs, which also contributed to the hazardous condition; therefore, Conti had sufficient operation and control over the vessels at the time of the accident so that it owed a duty of reasonable care to provide a reasonably safe premises and access/egress to third parties such as Captain Wall. The trial court was not clearly erroneous in finding that Conti was 50 percent liable.

CAUSATION
Conti also argues that the plaintiffs did not establish negligence and proximate cause by a preponderance of the evidence. Issues of negligence and causation in admiralty cases are treated as fact questions. Johnson v. Offshore Exp., Inc., 845 F.2d 1347 (5 Cir.1988), certiorari denied, Offshore Exp., Inc. v. Johnson, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Under maritime law proximate cause requires proof of direct and substantial cause which in a direct unbroken sequence produces the injury complained of and without which such injury would not have happened. Alverez v. J. Ray McDermott & Co., Inc., 674 F.2d 1037, 1043 (5 Cir.1982); Olympic Towing Corp. v. Nebel Towing Co., Inc., 419 F.2d 230, 233 (5 Cir. 1969), certiorari denied, Nebel Towing Co., Inc. v. Olympic Towing Corp., 397 U.S. 989, *689 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970).[12]
In the present case no eyewitnesses saw the accident. The party relying upon circumstantial evidence bears his burden of proof only if the evidence, taken as a whole, shows that the defendant's fault is the most plausible cause of the damage and no other factors can reasonably be ascribed as the cause. Anglin v. White, 572 So.2d 779, 782 (La.App. 4 Cir.1990).
In the case of In re Cooper/T. Smith, 929 F.2d 1073, 1078 (5 Cir.1991), certiorari denied, Abshire v. Gnots-Reserve, Inc., 502 U.S. 865, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991), the Fifth Circuit stated:
The standard of negligence under general maritime law is higher. The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury.
That court found that an action cannot be sustained if the speculation or conjecture is not based upon direct or strong circumstantial evidence to support a reasonable inference that the vessel was negligent or unseaworthy.
Conti contends that it was conjecture to determine whether Captain Wall fell in the gap between the two barges, from the other end of the barge, from the repair dock itself or from the CCT-401. However, Conti had control over the vessels and the docking area. Captain Wall was on the CCT-401 and would have encountered the hazards of poor lighting, lack of warning devices and unsafe premises of the entire slippery deck on Barge RTA-9, as well as a gap between the barges because his path would have crossed from the M-V GAZOO over Barge CCT-401 and Barge RTA-9 in order for Captain Wall to get to Conti's office barge to get his night orders. Progressive's deck hands, John Jenkins and Victor Barthelemy, Jr., as well as Progressive's President, Terry Boffone, all testified that the deck of Barge RTA-9 was covered with fertilizer residue, and they slipped on the deck of Barge RTA-9 when crossing from the CCT-401 to the RTA-9. Therefore, it is not mere speculation that Captain Wall also slipped on the deck of the RTA-9 and fell into the river. Barthelemy testified that normally there was no gap between barges, and they were usually tied up evenly. Brent St. Amant, Conti's dispatcher, stated that a normal gap might be six inches to a foot. He testified that there was a gap between Barge CCT-401 and Barge RTA-9 that was a couple of feet wide, a little larger than normal. On the night of the accident, there was a gap between Barge CCT-401 and Barge RTA-9 created by Conti's scaffold for Conti's repair work. The fact finder could draw reasonable inferences from the evidence that Conti's negligence substantially caused the death of Captain Wall. The trial court was not clearly erroneous in allocating Progressive's fault at 10 percent as Captain Wall was Progressive's *690 Jones Act employee.[13] The trial court noted that Progressive was partially responsible for Captain Wall's death because it did not enforce its safety regulations although Progressive had knowledge that Captain Wall was not complying with those regulations. Further, Barge RTA-9, was near the dock because it needed repairs for which Progressive and Conti were responsible.

Award for Pre-death Pain and Suffering
Conti argues that survival damages may not be awarded where death was a consequence of drowning, and the decedent's suffering would be substantially contemporaneous with his death under In Re Sincere Navigation Corporation, 329 F.Supp. 652 (E.D.La.1971), affirmed in part, vacated in part on other grounds, Matter of S.S. Helena, 529 F.2d 744 (5 Cir.1976), appeal after remand, Sincere Navigation Corp. v. U.S., 547 F.2d 255 (5 Cir.1977). The Fifth Circuit stated:
Evidence was presented that, in the usual case of death by drowning, the decedent is conscious of impending death and likely experiences some suffering for a period perhaps as long as two minutes prior to his loss of consciousness. This conclusion was drawn by a medical expert largely from the early onset of rigor mortis after death by drowning and the likelihood that this indicates strenuous muscular activity immediately prior to death.
Doubtless influenced by their inability to award damages for the emotional distress of survivors, courts have awarded damages in increasingly substantial amounts for the decedent's distress in circumstances where its existence and intensity can only be conjectured.

Id. at 659.
In that case no bodies were recovered from which any signs could be sought. The federal district court found that it was conjecture to determine that under the facts of the case, no one could say whether some of the deceased were likely asleep at the moment of the collision of two vessels or that others who were awake may have lost consciousness in a minute or less. Further, it was conjecture to determine that the those whose bodies that were not recovered died by drowning and that they suffered severe pain.
The district court's determination of the amount of damages in a maritime case may not be overturned unless clearly erroneous. Brunet v. United Gas Pipeline Co., 15 F.3d 500 (5 Cir.1994). Unless persuaded that the judge's decision is a clear abuse of discretion, the appellate court must accept the jury's determination as to quantum. Myers v. Pennzoil Co., 889 F.2d 1457 (5 Cir.1989). The discretion vested in the trier of fact is "great", and even vast in determining the amount of damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), certiorari denied Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Recompense for pain and suffering cannot be calculated with precision. Davis v. Sewerage and Water Bd. of New Orleans, 555 So.2d 664 (La.App. 4 Cir.1989), writ denied 558 So.2d 603 (La. 1990). Severity and duration of pain is considered in an award for pain and suffering. Perez v. State Through Depart. of Transp. and Development, 578 So.2d 1199 (La.App. 4 Cir.1991), writ denied, 581 So.2d 706 (La. 1991).
In Jones v. State, 95-1130 (La.App. 3 Cir. 3/27/96), 671 So.2d 1074, the state appellate court held that pain and suffering of the deceased are not assumed, but awards in survival actions are within the trial court's discretion, even in the absence of testimony of the decedent's predeath pain. In that case the court applied the statutory presumption of death arising from the disappearance of a mentally and physically handicapped resident of a developmental center. See also Dent v. Perkins, 629 So.2d 1354 (La.App. 4 Cir.1993), writ denied, 94-0116 (La.3/18/94) 634 So.2d 853, in which the parents of an infant who lived only thirty-six hours were permitted to recover for the child's pain and suffering *691 even though the child did not appear to be conscious after birth and there was no movement detected.
Conti contends that for an award for mental pain and suffering of the deceased seaman, the plaintiff must prove consciousness and physical injury prior to death. Conti asserts that pain and suffering experienced by a decedent are only compensable when such pain and suffering has been accompanied by an injury of a physical nature. In Cook v. Ross Island Sand and Gravel Co., 626 F.2d 746 (9 Cir.1980), there was no evidence that the decedent had sustained any skull fracture whatsoever. The federal appellate court noted that:
... Based on the absence of such evidence, Dr. Newman [the pathologist] concluded that the decedent had been conscious when he had entered the Columbia River, and that he had remained conscious for up to two and one-half minutes after he had become submerged in its water.
* * * * * *
... [W]e note that the pain and suffering of the decedent Dennis Cook did not result from an injury of a strictly mental nature. Dr. Larry Newman, the pathologist who had performed the autopsy on the decedent's body, testified that the cause of the decedent's death had been asphyxia from drowning. Asphyxiation is a physical injury, and thus the evidence of record establishes that the alleged pain and anguish of the decedent Dennis Cook resulted from a physical injury. [Emphasis added.]
Id., at 748.
In the present case Conti contends that the evidence that Captain Wall sustained no visible injury supports a theory of contemporaneous death, and no recovery is allowed. Conti asserts that if Captain Wall were conscious when he fell into the water, he would have cried out for help. However, the deck hands, Jenkins and Barthelemy, testified that they could not have heard Wall crying for help because of the noise from the generator and wires which they were throwing. Because there was no evidence of visible injury, Conti maintains that the trial court improperly awarded damages for pre-death pain and suffering.
In Davis v. Parkhill-Goodloe Co., 302 F.2d 489 (5 Cir.1962), the deceased's body was found floating in the water the next day after he was last seen. His body bore no signs of any unusual nature. The autopsy report and testimony concluded that the death was due to drowning. In remanding the case on the questions of causation and damages, the Fifth Circuit noted that there were many unknowns about the slipping or falling of Davis into the water. The court stated that "we should only say that substantial evidence will be required to sustain a finding of consciousness upon which to rest the permissible assumption of pain." Id., 302 F.2d at 495.
In Cook, supra, the appellate court affirmed a judgment for pain and suffering which accompanied death by drowning, based on the determination that asphyxiation is a physical injury, and thus the evidence of record establishes that the alleged pain and anguish of the decedent resulted from a physical injury, i.e., drowning.
In the present case the award for predeath pain and suffering could have been based on the fact that without physical injuries to his body except for asphyxiation, Captain Wall was more probably than not conscious when he entered the water, and experienced some pain and suffering in the process of drowning. The trial court did not abuse its discretion in awarding $50,000 for the deceased's pain and suffering prior to death.

COMPARATIVE NEGLIGENCE OF CAPTAIN WALL
Plaintiffs argue that Captain Wall was not comparatively negligent for his own death because no evidence shows that he was intoxicated and that additional safety measures would have prevented his death.
Plaintiffs assert that Dr. James Elston, the pathologist, testified that the decomposition of the body produces a blood alcohol level, even though the deceased did not drink alcohol shortly before death. Dr. Elston noted that Captain Wall's body had reached advanced stages of decomposition, and it was *692 not unusual to find a blood alcohol level of .08 had completely resulted from putrefaction. Plaintiffs aver that there was no evidence that anyone saw Captain Wall drinking alcohol that night.
Conti points out that Dr. Elston testified that Captain Wall's blood-alcohol level could be explained by decomposition of the body, but he stated that he would defer his opinion in this regard to a toxicologist. Dr. William George, a toxicologist, opined that it was unlikely that decomposition was the cause of the elevated blood-alcohol level but "more probably than not, that this individual ingested alcohol prior to his death."
Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are reasonable. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326. The trial court expressly stated that Captain Wall's blood-alcohol was a significant consideration in assigning fault. The trial court was not clearly erroneous in giving greater weight to Dr. George's testimony and finding that Captain Wall was intoxicated at the time of his death.
Plaintiffs also claim that there was no evidence that a work-vest life-jacket and skid-resistant shoes would have prevented the accident. Three of the witnesses testified that they slipped on Barge RTA-9 while they were wearing regulation footwear.
The evidence shows that Captain Wall preferred not to wear the regulation life vest, and he preferred to wear cowboy boots in violation of his company's written policies. He did not take a flashlight with him. He also had objects in both hands which would have made it more difficult for him to catch onto something when he slipped. Captain Wall was experienced in working on vessels, and he should have been aware of the general hazardous conditions of the vessels. Lack of a life jacket, the fact that Captain Wall was wearing cowboy boots, and his blood alcohol content contributed to the increased risk that the captain could have a fatal accident. As Progressive's President, Terry Boffone, explained, the work vest and proper shoes may not have saved Wall's life but they would have given him a better chance of survival. The trial court was not clearly wrong in finding that Captain Wall was 40 percent at fault.
This court affirms the trial court's findings on the allotment of fault and the amount of the damages awarded for Wall's pre-death pain and suffering. The district court's determination of the amount of damages in a maritime case may not be overturned unless clearly erroneous. Brunet v. United Gas Pipeline Co., supra; Randall v. Chevron, U.S.A., Inc., supra. The trial court's determination of damages and interest in the present maritime case was not clearly erroneous.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
KLEES, J., concurs.
PLOTKIN, J., concurs with written reasons.
KLEES, Judge, concurring.
I totally agree with the legal reasoning of Judge Byrnes in this matter. The concurrence espouses a novel approach to deal with causation and damages and proposes rule changes; yet reaches the same result. If it isn't broken, why fix it.
PLOTKIN, Judge, concurring with written reasons:
I agree with the majority's decision affirming the trial court's finding that defendant ContiCarriers and Terminals, Inc. was negligent and with the apportionment of liability. However, I disagree with the majority's legal reasoning on both the issue of causation and the issue of damages awarded for Captain Harold Wall's pre-death pain and suffering.

Causation
Events that follow other events are usually assumed to be causally connected. However, coincidence may not necessarily indicate causation. This case presents the complex, but unresolved, problem of the interaction between two basic tort concepts: (1) the apportionment *693 of liability in an accident in which the plaintiff suffers injury or death when that liability is divisible among multiple relevant persons, and (2) the determination of which person caused the entire injury or death. The majority fails to address how these two concepts interact to determine liability in this case.
Determining fault for an unwitnessed accident that results in death is always problematic for the judiciary because of the attendant uncertainty about apportionment of liability and causation. In this case, the uncertainty centers around whether one or more causes were responsible for Captain Wall's death. The problem is aptly illustrated by the fact that the trial court apportioned 50 percent of the liability for Captain Wall's death to Conti, 40 percent of the liability to Captain Wall, and 10 percent of the liability to Progressive.
On the causation issue, the majority engages in an in-depth factual analysis, after which it concludes that sufficient circumstantial evidence exists to find that "the defendant's fault is the most plausible cause of the damage and no other factors can reasonably be ascribed to the cause." This language, with its reference to proximate cause principles, does not provide lower courts with any guidance in cases that require apportionment of both fault and causation for an accident which results in injury or death.
As mentioned, I have no dispute with the apportionment of liability in this case. My problem lies with the reasoning and rules applied to the causation issue. I propose that we apply an alternative rule for proving causation in unwitnessed death cases, a rule already adopted by Louisiana courts in another type of case. Louisiana courts have eased the burden of proof in worker's compensation cases to permit recovery by a plaintiff who was healthy before an accident, but suffered a disabling condition that continually manifested itself after the accident. Such a plaintiff is allowed to recover compensation benefits if he presents sufficient medical evidence to establish a reasonable possibility of a causal connection between the accident and the disabling condition. See Walton v. Normandy Village Homes Assn., Inc., 475 So.2d 320 (La.1985); Haughton v. Fireman's Fund American Insurance Cos., 355 So.2d 927 (La.1978). Besides being applied in workers' compensation cases, the "reasonable possibility" burden of proof has been applied by the Louisiana Supreme Court in a tort case. See Housley v. Cerise, 579 So.2d 973 (La.1991). I recognize the distinction between accidental injury and death; however, that distinction should not be an obstacle to application of the rule of law proposed here.
The result of easing the burden of proof of causation in any unwitnessed maritime wrongful death action or other wrongful death claim would be to reduce the plaintiff's burden of proof. Under the proposed rule, a plaintiff would be required to prove only the following elements of a cause of action by a preponderance of the evidence: (1) that the decedent was working within the course and scope of his maritime employment at the time of the accident, (2) that the decedent was found dead, (3) that the accident was not witnessed, (4) that the defendant was negligent in executing a duty flowing to the plaintiff, and (5) that a reasonable possibility of a causal connection between the defendant's wrongful conduct and the plaintiff's death exists. Once the plaintiff proves the above elements, the burden of disproving causation would shift to the defendant, who would be required to present evidence proving that the death was not caused by his wrongful conduct.
Applying the same test used in workers' compensation cases to maritime tort claims is logical since the two types of cases are similar in many respects, with the major difference being the remedy received. Both types of cases deal with accidents, injuries, and deaths occurring during the course and scope of employment. Moreover, causation issues in the two types of cases are often similar, centering around the determination of whether the injuries were caused by unsafe working conditions.
Moreover, lowering the burden of proof of causation to a reasonable possibility of a causal connection would eliminate the type of gross speculation concerning the events leading to the decedent's death encountered in *694 the record of the instant case. The new burden of proof would provide a more reasonable basis for determining comparative causation, by allowing the court to assign a more accurate percentage of the fault to all relevant persons.
Applying my rule to this case, the evidence presented by the plaintiffs is unquestionably sufficient to prove Conti's causation. The evidence shows that Captain Wall was working within the course and scope of his employment at the time of the accident, walking across the deck of the boat in order to reach Conti's office; that evidence satisfies the first element of the plaintiff's burden of proof. Moreover, Captain Wall was unquestionably found dead as a result of an unwitnessed accident; that evidence satisfies the second and third elements of the plaintiff's burden of proof. The record also shows that Conti was negligent in executing a duty flowing to Captain Wall, as Conti failed to clean the deck that was routinely traversed by tug boat workers; that evidence satisfies the fourth element of the plaintiff's burden of proof. Finally, the record shows a reasonable possibility of a causal connection between Conti's wrongful conduct and Captain Wall's death; that evidence satisfies the fourth element of the plaintiff's burden of proof. Accordingly, I would find that the burden of proving that its evidence did not cause Captain Wall's death shifted to Conti.
In an effort to prove that Captain Wall's death was caused by factors other than its negligence, Conti presented the following evidence: (1) that the coroner found a high alcohol level in Captain Wall's bloodstream, and (2) that Captain Wall was not wearing required safety equipment which might have prevented his accident. However, the medical evidence indicates that Captain Wall's blood alcohol level was as easily attributed to his drowning as to any theory that he was intoxicated at the time of the accident; no other record evidence supports a finding that he was indeed intoxicated. Moreover, the fact that Captain Wall failed to wear the required safety equipment points more to his comparative negligence than to a lack of negligence on Conti's part. Under the circumstances, I would hold that Conti failed to carry its burden of disproving causation. Thus, I concur in the majority opinion affirming the trial court's finding of causation on Conti's part.

Award for pre-death pain and suffering
The propriety of awarding damages for a decedent's pre-death pain and suffering is always debatable. Because the decedent is dead, no direct evidence of pain and suffering is available. The majority struggles to solve this dilemma by reviewing the jurisprudence granting or denying this claim in similar drowning cases. In so doing, the majority cites federal jurisprudence, with which I disagree, requiring evidence of substantial pain to support an award for pre-death pain and suffering. After its review, the majority finds no manifest error in the trial court's decision to award $50,000 in damages for pain and suffering presumably endured by Captain Wall. This decision, according to the majority, is supported by the fact that no signs of physical injury were found, indicating that Captain Wall was conscious before his death. If he was conscious prior to his death, he obviously was aware of the hopelessness and helplessness of his plight, meaning that he suffered, the majority reasons.
I would resolve this issue by applying the changes to the Louisiana Code of Evidence related to civil presumptions, which were adopted by the 1997 Louisiana Legislature. Thus, in wrongful death cases, when the issue of pre-death pain and suffering arises, I would create a rebuttable presumption in favor of the claimants. The effect of this presumption would be to create a evidentiary procedure that would relieve the plaintiffs from the burden of proof. The burden of proof would shift to the opposing party, the defendant, to prove that the decedent did not experience any pre-death pain and suffering. The defendant, or opposing party, would be able to rebut the presumption by presenting medical or lay evidence or circumstances that the decedent did not suffer pre-death pain. Only if the defendant is able to contravert the presumption would the plaintiff have the burden of proving that the decedent did suffer pain and suffering. The standard of evidence would be, as in most civil cases, a preponderance of the evidence.
*695 Applying this test to the instant case, the presumption of pre-death pain and suffering arises automatically from the facts of the case. Thus, the defendants had the initial burden of proving that Captain Wall did not experience pre-death pain and suffering. The record in this case is practically devoid of any evidence to overcome the presumption. In fact, the evidence suggests that Captain Wall did incur pre-death pain and suffering. The lack of evidence of predrowning injury indicates that Captain Wall was conscious at the time he fell into the water; a fear of dying may be reasonably inferred from that fact alone, since his death by drowning was virtually guaranteed from the moment he fell into the water. A conscious person who finds himself under water, with no way of escape, obviously panics and suffers great mental and emotional distress prior to his actual death. Accordingly, I concur in the majority decision affirming the $50,000 award for pre-death pain and suffering.
NOTES
[1] Terry J. Boffone, President of Progressive, testified that Progressive actually owned one boat, the WARREN B. Progressive obtained other tugboats such as the M/V GAZOO through long-term charters. Boffone stated that Progressive had a day-by-day "handshake" oral charter agreement with Conti in which Progressive supplied the tug boat, the crew and insurance, and Conti supplied the work load and directions.
[2] Barges in a fleet are tied together for cargo to be unloaded. The unloaded barges are then tied off in a fleet to be transported to their next loading port. The movement of barges is continuous. Fleet boats such as the M/V GAZOO move the barges to and from a fleet.
[3] Barge CCT-401 was owned by Conti.
[4] Barge RTA-9 was owned by River Transportation Association ("RTA") and operated by the Marine Equipment Corporation ("MEMCO") under a bare boat charter.
[5] On September 6, 1989 Barge RTA-9 was placed in the Conti fleeting facility at the Conti's repair dock for repairs previously sustained while in the Conti Fleet facility. While being shifted by another of Progressive's boats (the M/V GIZMO), Barge RTA-9 had sustained minor damage to its starboard stern corner. It was agreed that Conti was to perform the repairs after the barge was unloaded, and Progressive agreed that the cost of repairs would be deducted from the charter hire.
[6] River Transp. Associates v. Wall, 5 F.3d 97 (5 Cir.1993).
[7] Interest was to run on $144,709 of the total award in accordance with law, and interest was to run upon the balance of the award, at the legal rate, from the date of judgment.
[8] Interest was awarded in accordance with the law.
[9] Although the trial court may have failed to specifically grant a new trial in part before rendering the second amended judgment, which contained substantive changes from the first revised judgment, the parties did not move for a new trial and did not question the specific amount of damages and interest awarded. Conti appealed and the plaintiffs answered the appeal after the second amended judgment was rendered, and the parties specifically appealed liability and/or the allocation of fault.
[10] The Fifth Circuit noted that a time charter was involved rather than a bareboat or a voyage charterer, and that the time charterer does not direct the destinations of the vessel and does not control the details of vessel operation required to reach those destinations.
[11] Brent S. Amant, Conti's dispatcher on the night of the accident, testified that someone, but not necessarily the captain, had to come from the M/V GAZOO to get the night instructions. The tugboat captain filled out the fleet picture which would be prepared when the crew changed twice a day in 24 hours. Conti's dock supervisor decided where the barges would go and made up the instructions, which would be given to the fleet tugboat captain by Conti's dispatcher in exchange for the fleet picture. On the night of the accident, Captain Wall was the person who went to pick up the night orders from Conti's dispatcher.
[12] The majority has considered but rejects the approach to causation suggested by the concurring opinion for the following reasons:

(1) The statement in the concurring opinion, "Events that follow other events are usually assumed to be causally connected," is an elementary fallacy known to students of logic as the "post hoc, ergo propter hoc" fallacy which this court specifically recognized and rejected in Polk v. Blanque, 93-1740 (La.App. 4 Cir. 3/15/94), 633 So.2d 1382. This court stated:
Post hoc, ergo propter hoc, "is an argument that asserts that one event is the cause of another from the mere fact that the first occurred prior to the second."3
* * * * * *
3. Barry, V.E. and Soccio, D.J., Practical Logic, 3rd ed.1988 at p. 244. In discussing fallacies of causation, the authors write:
"As an absurd example, suppose that after breaking a vase, a person fell and broke a leg. If we inferred that breaking the vase caused the accident, we'd be guilty of the post hoc fallacy. A more serious example is found in Egyptian history. Egyptians used to worship a bird named the ibis because each year, shortly after flocks of ibis had migrated to the banks of the Nile, the river overflowed its banks and irrigated the soil. The Egyptians believed the ibis caused the flood water, when of course both the birds' migration and the river's overflow were attributable to the change of season."
Id. at 1387.
(2) The approach of the concurring opinion does not clarify matters as it purports to do. It merely shifts the burden of proof.
[13] The Jones Act employer is liable for even the slightest possible negligence. River Transp. Associates v. Wall, 5 F.3d 97 (5 Cir.1993).