809 So.2d 1084 (2002)
Brian PREATTO
v.
TIDEWATER MARINE, INC.
No. 2000-CA-0624.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 2002.
*1085 Robert M. Johnston, Adams and Johnston, New Orleans, LA, for Plaintiff/Appellant.
*1086 Miles P. Clements, Frilot, Partridge, Kohnke & Clements, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY).
Judge MIRIAM G. WALTZER.
Plaintiff, Brian Preatto, appeals a judgment in his favor against his former employer, Tidewater Marine, for damages totaling $365,000. Preatto argues that the trial court abused its discretion in limiting his cross-examination of Tidewater's employee concerning racial bias and that this error caused the jury to award an excessively low amount in damages and to wrongly apportion fault between Tidewater and Preatto.

HISTORY OF THE CASE
After suffering an injury on the job, Preatto sued his employer, Tidewater, for maintenance and cure under general maritime law and under the Jones Act. After extensive discovery, Tidewater filed a motion in limine to exclude certain testimony by Preatto that Tidewater's employee, Captain Timothy Hale, made racial slurs on two separate occasions within Preatto's earshot but not directed to Preatto. After a hearing, the trial court granted the motion and excluded the testimony.
After a jury trial, the trial court rendered a judgment in accordance with the jury's verdict on 22 March 1999. The trial commenced on 1 March 1999 and concluded on 19 March 1999. The jury found for Preatto on his claim under the Jones Act and for Tidewater on his claim that the vessel was unseaworthy. The jury apportioned fault between Preatto (75%) and Tidewater (25%). The jury awarded damages totaling $365,000, including $15,000 for past pain and suffering, $6,500 for future pain and suffering, $40,000 for past lost wages, $109,000 for future loss of earning capacity, and $195,000 for future medical expenses. After hearing, the trial court denied Preatto's motion for new trial or judgment notwithstanding the verdict.
Preatto appeals the judgment arguing that the trial court erred in excluding Preatto's testimony that he overheard Captain Hale make racial remarks on two occasions, and that this exclusion prejudiced the jury verdict necessitating a de novo review by the appellate court. Alternatively, Preatto argues that the jury's apportionment of fault and award of damages were manifestly erroneous.

STATEMENT OF FACTS
Tidewater employed Preatto as a deckhand on its vessel the MV GULF MISS. Before sunrise on 8 July 1994 Preatto, after boarding an assist tug, the C.R. HADEN, to dock a very large barge, the ISLA DEL SOL, towed by the MV GULF MISS, stumbled and injured his left knee and back. On 20 July 1994 Preatto sought medical treatment for the injury to his left knee and back from Dr. Phillip Ferris, a non-board certified orthopedic surgeon. Prior to the 1994 accident, Dr. Ferris had treated Preatto for an injury to the left knee, performing arthroscopic surgery in May 1993 but releasing him to return to work in August 1993. After the May 1993 surgery Dr. Ferris noted the dilapidated state of the hardware in Preatto's knee. After the 1993 surgery Dr. Ferris released Preatto to return to work but prescribed physical therapy and narcotic pain medication for his knee injury. The physical therapist noted that Preatto continued to complain of severe pain and reported little, if any, improvement. Moreover, the physical therapist noted that Preatto failed to return for treatment, although he had not reached his maximum improvement.
After the accident in July 1994 on 20 September 1994 Dr. Ferris performed a second arthroscopic surgery on Preatto's left knee and discovered extensive damage *1087 to the knee. He discovered that hardware in Preatto's knee was displaced and had severely compromised the stability of the knee. Moreover, he then understood the cause of the extreme pain for which Preatto had complained. Preatto had suffered injury to his left knee at the age of fifteen and the hardware was the result of this injury.
In March 1995, an MRI of his back was done and revealed a diffuse disc bulging at L-4/5 and moderate disc dehydration with a subligamentous left para central disc herniation at L5/S1 resulting in left neuroforaminal encroachment. After the MRI Dr. Ferris referred Preatto to Dr. Carlos Gorbitz, a neurosugeon, who examined Preatto in April 1995 and opined that Preatto did not need surgery on his back. Dr. Ferris concurred with Dr. Gorbitz' recommendations.
On 12 September 1995 Dr. Ferris performed another arthroscopic surgery on Preatto's left knee and discovered that the condition of his knee was worsening. In January 1996, Dr. Ferris performed knee replacement surgery on Preatto. Dr. Ferris believed that future surgeries and other medical treatment would be necessary to continue the repair to Preatto's knee. Dr. Ferris believed that Preatto was permanently disabled
Dr. Edward Shwery, an expert in the field of psychology and chronic pain management, began treating Preatto on 18 June 1997. He treated him for chronic pain and depression. He first saw Preatto based upon a referral by Dr. Logan who suggested the psychological evaluation before surgery after a conversation with Preatto's attorney. Dr. Shwery believed Preatto suffered chronic pain and depression and needed treatment. He also believed he needed future treatment. In reaching his conclusions, Dr. Shwery only considered Preatto's medical records from July 1994. Dr. Shwery believed that Preatto's problems were magnified because he lost the ability to do a job he enjoyed. However, he was unaware that Preatto had worked in that position for less than a year before the accident. Moreover, he based his opinions almost entirely on what Preatto reported to him.
Dr. John Logan, an expert in the field of orthopedic surgery, first treated Preatto on 28 March 1996 for his back injury. Dr. Logan reviewed the earlier MRI and concurred with the conclusions of a bulging disc at L-4/5 and a herniated disc at L5/ S1. After months of further diagnostic treatment, Dr. Logan referred Preatto to Dr. Susan Glade, a psychiatrist, for evaluation before surgery and pain management. Dr. Logan and his associate, Dr. Charles Aprill, believed that Preatto was exaggerating his pain and relying on narcotics for these exaggerated symptoms. On 6 March 1998, Dr. Logan performed surgery on Preatto's back. After the surgery, Preatto continued to suffer pain in his back and sleep deprivation. At the time of trial, he continued to prescribe narcotic pain medication and sleep medication. Preatto was taking narcotic pain medication before the July accident and did not inform Dr. Logan of this need. He opined that Preatto was permanently and totally disabled. He believed that Preatto would incur future medical expenses to manage his disability. Although Dr. Logan related the back injury to Preatto's accident in July 1994, he based this opinion solely on Preatto's statement that the accident caused this injury.
Dr. Susan Glade, an expert in the area of psychiatry, testified that Preatto suffered from chronic pain and depression. She had treated him since October 1996. Dr. Logan referred him to her.
Cornelius Gorman, an expert in the area of vocational rehabilitation, testified he first saw Preatto in November 1996. *1088 However, he did not form an opinion about Preatto's ability to work because his medical condition had not been stabilized.
Dr. Alberto Arrillaga performed a preemployment examination on Preatto in January 1993. After his examination, he concluded that Preatto's physical condition was normal and nothing prevented him from performing the work required by Tidewater. However, Preatto did not disclose numerous prior injuries to his back, neck, knee and arms. Moreover, he intentionally mislead Dr. Arrillaga in his attempt to take a medical history.
Preatto testified shortly before five a.m. on 8 July 1994 Captain Tim Hale, Tidewater's employee in charge of Preatto's vessel, summoned him to the wheelhouse and ordered him, along with another deckhand, to board the assist tug to help dock the ISLA DEL SOL. He stated that he requested a flashlight from Captain Hale, that Captain Hale had two flashlights, but that Captain Hale refused because he needed the flashlights to see his instrument panel. He also testified that he knew flashlights were equipment available on the GULF MISS but he did not take the time to get one. After boarding the barge towed by Tidewater's vessel, he bumped into a railroad jack and fell, injuring his left knee and back. Upon returning to the GULF MISS he reported the accident. He remained on the vessel until 13 July 1994 when he returned to New Orleans. He didn't see a doctor about his injury until 20 July 1994, the same day he reported the accident to Louis Theriot, Tidewater's personnel director.
Captain Hale confirmed that he ordered Preatto and another deckhand to board the assist tug and help dock the barge. He didn't recall the men asking for flashlights. He testified that at the time he began the process of docking the barge, the sun had not risen, and that darkness generally made such procedures more dangerous. After the barge was docked and the men returned to the MV GULF MISS, he testified that neither Preatto nor any other crew member reported any accident or injury. Since no injury was reported to him, he did not complete an accident report until 20 July 1994, when Louis Theriot called and asked that Captain Hale make out such a report, since Preatto was complaining that he had suffered an injury on 8 July 1994.
Louis Theriot, a former Tidewater employee, testified that Preatto first applied for a job with Tidewater on 4 January 1993. He testified that Preatto completed and signed his employment application. He stated that Preatto submitted to a drug screen on 7 January 1993, and Preatto completed and submitted a medical question form to the doctor on 28 January 1993. He denied completing any personal or medical history forms for Preatto. Theriot denied receiving a report from Preatto of the alleged injury before 20 July 1993, although Preatto claims that he tried to report the incident to Theriot on 13 July 1993. Preatto claims Tidewater's office was closed on 13 July 1993, but Theriot denies that allegation.
Dewey Wilson, a Tidewater employee, testified that he taught classes in 1993 and 1994 and Tidewater offered those classes to its employees interested in promotions from deckhand to a licensed able bodied seaman. He testified that he taught classes which lasted less than a week to prepare employees for the required tests. He stated that Preatto started the class in December 1993 and attended two days of the course but never finished it because he did not have the necessary sea time hours. He contradicted Preatto's testimony that he taught three week classes to prepare for the exam, that Preatto attended two of *1089 the required three weeks and that the class closed.
Captain Albert Churchil, a barge pilot or docking pilot employed by Galco, testified that he boarded the assist tug and then picked up two men from the Tidewater boat the GULF MISS and then boarded the barge the ISLA DEL SOL, a Galco barge, around daybreak on 8 July 1994. He testified that he and the Tidewater employees boarded the barge when the light was sufficient to see without flashlights. He had no reports of any accident or injury on the barge.
Dr. Terry Lee Habig, an expert in the area of orthopedic surgery with board certification, testified that he examined Preatto on 23 October 1995. After examining Preatto and reviewing his medical records, including the video of the second arthroscopic surgery on his left knee after the 1994 accident, Dr. Habig stated that he believed the damage to Preatto's knee was caused by normal wear and tear and not by trauma to the knee in 1994.[1] Dr. Habig disagreed with Dr. Ferris' decision to perform a total knee replacement on Preatto in 1996. Moreover, he believed that the injuries suffered by Preatto before the 1994 accident would eventually require Preatto to undergo knee replacement surgery. On cross-examination, Dr. Habig was questioned about Dr. Arrillaga's opinions of Preatto's physical condition after his pre-employment examination in January 1993. Specifically, he was asked about Dr. Arrillaga's recommendation that Preatto was physically capable of performing heavy manual labor. However, Preatto denied completing the medical history upon which Dr. Arrillaga based his opinion and recommendations, and Dr. Arrillaga admitted in his testimony that he would not have recommended Preatto for employment had he known his true medical history. At the least, Dr. Arrillaga opined that he would have conducted further testing and a more thorough examination had the medical history been more truthful.
Dr. George Cary, an expert in the area of orthopedic surgery with board certification, testified that he examined Preatto on 13 June 1996. Preatto told Dr. Cary when asked that he had never suffered an injury to his back before July 1994. The record is replete with evidence that Preatto had on numerous occasions sought medical attention for back injuries in the 1980's, in 1991, and in 1992. He believed that Preatto suffered from degenerative changes regarding his lower back and he related the injury to his knee to the fracture in 1977. He examined Preatto again on 4 November 1997 and noticed a marked improvement in the condition of his left knee. He testified that he believed any aggravation to the degenerative changes in Preatto's lower back should have resolved itself in a year after the incident in 1994.
FIRST ASSIGNMENT OF ERROR: The trial court erred by excluding Preatto's testimony that Tidewater's employee, Captain Hale, made inappropriate racial slurs on two occasions in a position where Preatto heard these remarks but did not direct them to Preatto.
In his deposition, Preatto states that he heard Captain Hale make inappropriate and offensive comments concerning race during the O.J. Simpson trial.[2] Preatto testified that two witnesses overheard these comments. However, these witnesses did not corroborate Preatto's testimony. *1090 Captain Hale denied making these statements. Preatto argues that the trial court erred in excluding his uncorroborated testimony that Captain Hale made two racially offensive statements where Preatto overheard the remarks. Preatto argues that the statements were admissible under LSA-C.E. art. 607. He relies almost exclusively on Simmons v. Collins, 95-0982 (La.4/21/95), 655 So.2d 330. The Supreme Court reversed the ruling of the appellate court and reinstated the ruling of the trial court, determining that the "the police record or the testimony of the person preparing it may be admissible under LSA-C.E. art. 607(D), provided that a proper foundation has been laid under LSA-C.E. art. 613 and other applicable rules of evidence." (Emphasis added.) We fail to see how Simmons controls the outcome in Preatto's appeal. The Court in Simmons did not consider LSA-C.E. art. 403 or any other rule of evidence, except LSA-C.E. art. 607(D). Since the trial court in this case did not rely on LSA-C.E. art. 607 for her ruling, we find Simmons inapplicable.
We find Preatto's arguments that the trial court erred both unpersuasive and misleading for a multitude of reasons. Preatto argues that LSA-C.E. art. 607(C) mandates that the trial court allow questioning of any witness about racial bias. Both by the explicit language of the article and from its comments, it is clear the legislature did not intend to so severely restrict the discretion afforded the trial court in determining admissibility. LSA-C.E. art. 607 provides, in pertinent part:
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:

(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of a witness.
(Emphasis added.) By its very language, any evidence admissible under article 607 may be inadmissible under another rule, including article 403. Moreover, the comments to LSA-C.E. art. 607 specifically state that evidence sought to be introduced pursuant to Paragraph C subjects the evidence to "the balance recognized by Article 403, and is not intended to restrict the discretion of the trial court to exclude marginally probative lines of questioning when they become redundant or unduly timeconsuming, or are offset by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Comment (h) to LSA-C.E. art. 607. Regarding Paragraph D, the comments provide "evidence sufficiently relevant to the issues of the case under article 403 is admissible regardless of whether or not it contradicts a prior witness." Comment (l) to LSA-C.E. art. 607.
Preatto argues that LSA-C.E. art. 607 mandates the admissibility of the statements of racial animus by Captain Hale, without regard to LSA-C.E. art. 403. We do not agree. We believe the language and the comments support our analysis.
The trial court found that the racial statements, assuming relevance, were inadmissible under Article 403. LSA-C.E. art. 403 provides,
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
*1091 Preatto argues that the trial court erred in determining that the remarks' probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. The remarks were not directed to Preatto. Preatto does not claim that Tidewater or Captain Hale discriminated against him based upon his race. The only evidence of the remarks is the uncorroborated, selfserving testimony of the injured seaman, Preatto. The alleged comments are extremely offensive. We find no error in the trial court's conclusion that the probative value of these remarks is far outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.
Preatto has not proven that the exclusion of the evidence of racial remarks constituted an error subject to appeal. LSA-C.E. art. 103 provides, in pertinent part,
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.
A reviewing court is prohibited from reversing a harmless error. Hasney v. Allstate Insurance Co., XXXX-XXXX (La.App. 4 Cir. 2/7/01), 781 So.2d 598, 606. Preatto argues that the jury's verdict hinged upon a determination of the credibility of both himself and Captain Hale. We find that proposition hard to believe in light of the mountain of evidence presented by both Preatto and Tidewater on issues of both liability and damages. Captain Hale and Preatto disagree on two important factual issues, whether Preatto reported the accident and whether Preatto asked for a flashlight. The individuals' testimony does not constitute the only evidence concerning these factual disputes. Preatto either misconstrues or misrepresents the record when he argues that Captain Hale's testimony constituted the only evidence of material facts in the case, thus bolstering his argument that the case revolved around Captain Hale's credibility. The jury determined that Preatto had been injured in an accident during his employment with Tidewater and awarded him damages. Preatto complains that the exclusion of any evidence of these unrelated, racially injurious remarks influenced the jury's decision regarding damages and apportionment of fault. If anything the exclusion of such evidence tempered the jury's decision and limited the process to the facts. What Preatto is asking this court to condone is exactly what the legislature prohibited with LSA-C.E. art. 403. Such evidence could only be used for unfair prejudice, confusion of the issues, or misleading the jury. After a careful review of the record, we do not believe the trial court abused her discretion in excluding the uncorroborated testimony by Preatto of two unrelated and impersonal racial slurs by Tidewater's employee.
SECOND ASSIGNMENT OF ERROR: The jury erred in apportioning 75% of the fault for the accident to Preatto and only 25% to Tidewater.
Preatto argues that the trial court erred in apportioning fault. He urges this court review the record evidence de novo, since the trial court allegedly erred in excluding the racist remarks by Captain Hale. However, based upon our resolution of the first assignment of error, we believe the jury's determination of the parties' fault is entitled to great discretion and the appropriate standard of review is manifest error.
In a case for damages under the Jones Act, a court should consider the negligence of the employer according to the standard of a reasonable employer under like circumstances and should consider the negligence of the seaman according to the standard of a reasonable seaman under like circumstances. Parker v. Delta Well Surveyors, Inc., XXXX-XXXX (La.App. 4 Cir. *1092 5/2/01), 791 So.2d 717, 722, citing Vendetto v. Sonat Offshore Drilling Co., 97-3103 (La.1/20/99), 725 So.2d 474, 479. Irrespective of the duty imposed on each, the standard of care on both an employer and a seaman is that of a reasonable person in the same position under the circumstances. Id.
Preatto and his fellow deckhand, who Tidewater terminated for poor work performance, testified that Captain Hale ordered them to board the assist tug in the dark, that they asked for a flashlight but Captain Hale refused, that they boarded the assist tug and the barge and that Preatto stumbled in the dark and injured his knee and back. However, several witnesses, both expert and fact, testified that the accident occurred in the daylight. Moreover, several members of the crew of the MV GULF MISS testified that they had access to flashlights and that they knew to use them in the dark.
Preatto argues that the jury erred in apportioning fault. After reviewing the entire record, we find no error in the allocation of fault between Preatto and Tidewater.
THIRD ASSIGNMENT OF ERROR: The jury erred in failing to find Tidewater's vessel unseaworthy.
Preatto asks this court to reverse the jury's finding that he failed to prove the unseaworthiness of Tidewater's vessel. The seaman bears the burden of proving that the unseaworthy condition played a substantial part in bringing about or actually causing his injury and that the injury was either a direct result or a reasonably likely consequence of the unseaworthiness. Vendetto, supra at 481-82. Preatto argues that Captain Hale refused to relinquish his flashlights because the lights on the vessel's instrument panel did not work. He argues that Captain Hale's refusal then caused him to slip and fall on the barge. We do not believe a more attenuated claim could be made. We find no error in the jury's finding that Preatto failed to prove a claim for damages for the vessel's unseaworthiness.
FOURTH ASSIGNMENT OF ERROR: The jury erred in awarding damages totaling $365,000.
The factfinder's determination of the amount of damages in a maritime case may not be overturned unless clearly erroneous. Unless the appellate court is persuaded that the jury's decision is a clear abuse of discretion, the appellate court must accept the jury's determination as to quantum. The discretion vested in the trier of fact is "great" and even vast in determining the amount of damages. Wall v. Progressive Barge Line, Inc., 97-0665 (La.App. 4 Cir. 10/29/97), 703 So.2d 681, 690.
Preatto argues that the jury awarded excessively low damages. He argues that the evidence overwhelmingly establishes his disability and the losses associated with that permanent and total disability. However, Preatto fails to take into account the possibility that the jury, although believing that Preatto suffered some accident and injury, may not have believed that the accident on board the barge caused his alleged permanent and total disability, his knee injury, or his back injury. Preatto repeatedly lied to both his treating physicians, Tidewater's doctors, and the jury about prior injuries. Moreover, Dr. Ferris, Preatto's treating orthopedist, testified that he relied exclusively on Preatto's veracity in concluding that the July accident on the barge caused the injuries to his knee and back. Dr. Ferris also testified that Preatto did not reveal certain injuries to him and that those injuries effected his conclusions. Preatto argues that Tidewater's pre-employment physical examination established *1093 that he was in good health prior to the accident in July 1994. However, the evidence established that Preatto lied to the doctor performing the examination, and Dr. Arrillaga testified that Preatto's falsehoods impacted the results of this physical examination. After a review of the entire record, we cannot say that the jury abused its discretion in awarding $365,000 for the injuries suffered by Preatto in July 1994.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Dr. Habig testified that the video of the arthroscopic surgeries in 1993 and September 1994 on Preatto's knee was not made available to him.
[2] Without emphasizing the importance of the time, we note that the O.J. Simpson trial, and Preatto specifically mentioned the trial in his deposition, had not begun before Preatto's injuries in July 1994.