## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1403

HEATHER REIDER

VERSUS

STATE OF LOUISIANA,
THROUGH THE LOUISIANA BOARD OF TRUSTEES,
FOR STATE COLLEGES AND UNIVERSITIES,
THROUGH MCNEESE STATE UNIVERSITY

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 98-935,
HONORABLE ALCIDE GRAY, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, Osward A. Decuir and James T. Genovese, Judges.

**AFFIRMED.**

**Charles C. Foti, Jr.**
**Attorney General**
**Elizabeth B. Hollins**
**901 Lakeshore Drive, Suite 820**
**Lake Charles, Louisiana 70601**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     State of Louisiana, through Board of Trustees,
     For State Colleges and Universities, through McNeese State University

**David D. Palay, Jr.**
**Alvin D. Hunt**
**700 Pujo Street**
**Lake Charles, LA 70602**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     Heather Reider

**GENOVESE, Judge.**

The State of Louisiana through its Board of Trustees for State Colleges and Universities through McNeese State University ("McNeese") appeals the $485,000.00 judgment rendered pursuant to jury verdict finding negligence and awarding damages to Plaintiff, Heather Reider ("Reider"). We affirm.

## FACTS

On April 16, 1997, Heather Reider, desiring to attend a baseball game between McNeese State University and Rice University, approached the main entrance ticket booth along the third base line of McNeese's baseball field in Lake Charles, Calcasieu Parish, Louisiana. While Ms. Reider was approaching and near the ticket booth, she was struck in her right eye by an errant foul ball. The impact caused a complete fracture and implosion of the zygomatic structure of her right eye, laceration of the inner part of her right eyelid, and permanent macular blindness resulting in permanent 10/200 vision in her right eye. Ms. Reider sued McNeese for her personal injury.

The matter proceeded to trial by jury on April 26, 2004, with the jury awarding damages as follows:

| | |
|---|---|
| Past and present pain, suffering, physical and mental anguish | $ 75,000.00 |
| Future pain, suffering, physical and mental anguish | $ 25,000.00 |
| Loss of enjoyment of life | $200,000.00 |
| Permanent Disability | $100,000.00 |
| Medical expenses, past and future | $ 85,000.00 |
| Total | $485,000.00 |

McNeese appeals.

## ISSUES

The issues raised by McNeese in this appeal are (1) whether the jury correctly found an unreasonably dangerous condition existed at its baseball park; (2) whether

2

the jury correctly found McNeese had prior knowledge of said unreasonably dangerous defect; (3) whether the trial judge prejudiced the jury against McNeese by prohibiting the testimony of its expert witness, Jeff Peterson; (4) whether the conduct of the trial judge prejudiced the jury against McNeese; and (5) whether the jury abused its discretion and incorrectly awarded general and special damages to Plaintiff.

## THE STANDARD OF APPELLATE REVIEW

The standard of review which we must apply in examining the factual conclusions of a trier of fact was articulated by our supreme court in *Rosell v. ESCO*, 549 So.2d 840 (La.1989), and reiterated in *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993):

> A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two part test for reversal of a factfinder's determinations:
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> . . . .
>
> . . . [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.
>
> . . . .
>
> Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 356 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find

manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Housley v. Cerise*, 579 So.2d 973 (La. 1991) (*quoting Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

In light of these legally stated principles, we have examined the record of these proceedings.

## LAW AND DISCUSSION

After a thorough review of the voluminous record, we find that there was sufficient proof for reasonable persons to resolve the liability question in favor of the Plaintiff and in accordance with the substantive law set forth in La.R.S. 9:2800 and La.Civ.Code art. 2317.

Louisiana Civil Code Artcle 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Louisiana Revised Statutes 9:2800 provides, in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and

4

has failed to do so.

D. Constructive notice shall mean the existence of facts which infer actual knowledge.

*Unreasonably Dangerous Condition and Notice*

The standard of care owed by McNeese to patrons of its baseball park is found in La.R.S. 9:2800. Under this statute, to carry her burden, Plaintiff must show: (1) the baseball field was in the care, custody and control of the Defendant; (2) the baseball park had a vice or defect which created an unreasonable risk of harm; (3) Plaintiff's injury was caused by the defect; and (4) the Defendant had actual or constructive knowledge of the dangerous condition. *McDaniel v. Carencro Lions Club*, 02-1244 (La.App. 3 Cir. 3/12/03), 846 So. 2d 837 (*citing Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So. 2d 1002).

There is no dispute that the baseball field was in the care, custody and control of the Defendant; however, Defendant argues that an unreasonable condition did not exist at the McNeese State University baseball park, and if one did, they had no prior knowledge of said unreasonably dangerous defect. McNeese argues that the Plaintiff was an experienced softball player herself and, therefore, was sufficiently aware of the dangers involved in attending such a sporting event. McNeese further argues that in twelve years since the construction of the baseball park, an accident of this nature has never occurred, thus, even if a dangerous condition existed, they had no prior knowledge of the defect.

Plaintiff contends that regardless of the dangers assumed by attending this sporting event, she had not yet entered the field and had not yet assumed any risk associated therein. Plaintiff further contends that in order to enter the baseball park she had to purchase the ticket by walking to the ticket booth through a dangerous area known by the Defendant to be susceptible to foul balls down the third base line.

5

Plaintiff testified she could not see the field of play. At the time she was struck, Plaintiff was not yet inside the baseball park, but was approaching the main entrance preparing to present her student identification card to the ticket booth operator.

The Director of Facilities and Planning Operations for McNeese State University, Mr. Richard Rhoden, testified that he was in charge of the design and construction of the McNeese baseball field during the relevant time period. Mr. Rhoden, a defense witness, admitted in his testimony on direct examination that he knew the entranceway to the baseball field was likely to be struck by errant foul balls. Mr. Rhoden admitted that the ticket booth was purposely designed with extra wide eaves in order to protect its windows from being hit by foul balls. When Mr. Rhoden was asked by Plaintiff's counsel on cross examination if his design of the ticket booth with extra wide eaves meant he recognized the possibility that foul balls would be hit in the immediate area of the ticket booth, Mr. Rhoden stated, "[w]e knew that there's a possibility of foul balls, yes, sir." Thus, Defendant cannot successfully argue it did not have notice of the defect when it specifically constructed extra wide eaves on the ticket booth to protect against errant foul balls. Defendant chose to protect the building but not the patrons.

Defendant's liability expert, Mr. Gene Moody, testified that a wooden, decorative fence constructed along the third base line in September of 1996, only seven months prior to this accident, completely obscured the view of the playing field from patron's entering at the main entrance. McNeese built the wooden decorative fence at a cost of $19,400.00. Plaintiff's liability expert, Dr. Leonard Lucienko, testified that a protective fence from ten feet to fifteen feet high along the entrance walkway would cost between $4,500.00 to $13,500.00. When asked by Plaintiff's

6

counsel if he agreed that the construction of a protective fence as proposed by Dr. Lucienko would provide protection to patrons entering the park, Mr. Moody admitted, "[y]es . . . if they stayed under the overhang of the fence up close to it, then that would be a protection from fly balls – foul balls." The burden of prevention is slight and the gravity of the harm is great.

There will be foul balls as long as there are baseball games. Ball park owners cannot be held legally responsible for every foul ball in common areas of the ball park. But, there are certain areas of a ball park where protection is required. Obviously, the area behind home plate must be protected from anticipated foul balls. The area where people gather to purchase food and drink or go to the restroom should be protected. Another such area would be the main entrance ticket booth where people must go to purchase a ticket to enter the ball park to see the game. There is an unreasonable risk of harm, and an unreasonably dangerous condition, when patrons have to purchase their ticket at the main entrance ticket booth of the ball park along the third base line where one knows or should know, and can reasonably anticipate, numerous and errant foul balls. This is an area, like the concession area, restroom area, and the area behind home plate, where there should be a reasonable expectation of protection. In the case at bar, Plaintiff, an innocent McNeese baseball fan outside the baseball park and in line to buy a ticket at the main entrance ticket booth, was unreasonably unprotected and struck by an errant foul ball down the third base line thereby sustaining a serious and permanent eye injury.

We are satisfied that the record contains a sufficient factual basis to support the jury's finding that the McNeese baseball park presented an unreasonably dangerous condition to patrons and that McNeese had notice of the existence of said defect. There was no manifest error and the jury was not clearly wrong.

*Exclusion of Expert's Testimony*

McNeese asserts that the trial judge should have allowed the jury to hear expert testimony provided by Jeffrey Peterson in the field of adjustment counseling to address the Plaintiff's state of mind concerning future counseling. Since Plaintiff had not claimed any damages in association with an inability to work, the trial judge ruled that Mr. Peterson could not testify in the field of vocational rehabilitation. However, upon questioning of Mr. Peterson by Plaintiff's counsel, it was revealed that the witness had never been accepted solely as an expert in the field of adjustment counseling without also being admitted simultaneously as an expert in the field of vocational rehabilitation. Upon this admission, the trial judge excused the jurors and questioned Defense counsel as to the substance of Mr. Peterson's proposed testimony. When it was ascertained that Mr. Peterson would testify as to Plaintiff's failure to mitigate her damages by not undergoing the psychological treatment suggested by Dr. Lawrence Dilks, the judge ruled the testimony was cumulative and inadmissable. The trial judge instead ruled that the Plaintiff would offer a stipulation and then instructed the jury that a stipulation was being entered into the record in lieu of Mr. Patterson's testimony. The stipulation asserted that Plaintiff had, in fact, not sought the follow-up treatment recommended by Dr. Dilks.

Article 702 of the Louisiana Code of Evidence states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court's function is to determine that all expert testimony which is admitted into evidence is both reliable and relevant. *State v. Foret*, 628 So.2d 1116 (La.1993). Although Mr. Peterson's testimony may have been reliable as to Plaintiff's follow-up treatment, that information is cumulative, and thus irrelevant as to the

8

mitigation of her damages.

Trial judges have the discretion to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. Because Dr. Dilks had already testified before the jury regarding the proposed psychological treatment and Plaintiff's failure to follow his recommendation, we agree with the trial court that the testimony to be offered by Mr. Peterson was cumulative. We find no error on the part of the trial court to exclude Peterson's testimony.

*Actions of the Trial Judge*

McNeese claims the trial court prejudiced the jury by allegedly making inappropriate comments on the evidence in open court. The remarks allegedly made were directed against both Defense and Plaintiff's counsel or in reference to attorneys in general. These remarks, though inappropriate, were harmless and did not prejudice the jury.

"A trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts intervene." *Briscoe v. Briscoe*, 25,955, p.8 (La.App. 2 Cir. 8/17/94, 641 So.2d 999, 1005. The judge is required to conduct a trial in an orderly, expeditious manner and to control the proceedings so that justice is done. La.Code Civ.P. art. 1631; *Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. P'ship*, 01-2812 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, *writ denied*, 03-306 (La. 4/4/03), 840 So.2d 1219.

Accordingly, while we find the judge's comments may have been inappropriate, we find the trial court's comments to be harmless error. "A reviewing

9

court is prohibited from reversing a harmless error." *Preatto v. Tidewater Marine, Inc.*, 00-624, p. 11 (La.App. 4 Cir. 2/6/02), 809 So.2d 1084, 1091, *writ denied*, 02-678 (La. 5/3/02), 815 So.2d 822. This assignment of error lacks merit.

*Damages*

Finally, McNeese argues the record does not support the jury's award of $85,000.00 for Plaintiff's past and future medical expenses, and $400,000.00 for her general damages. We disagree.

In *Andrus v. State Farm Mut. Auto. Ins. Co.*, 95-0801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210, the supreme court stated:

> In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.
> Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *in either direction*, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
> (Citations omitted.)

Dr. Samuel Stahl testified that the Plaintiff suffered a "very painful" injury from a "zygomatic complex fracture that involved the connection of the facial bones to the skull" and "fairly extensive wide fractures of her nasal bones."

Dr. James Patrinely testified that the Plaintiff suffered "a high degree of pain" from multiple fractures of her facial bones, a rupture of the eye itself, and a torn eyelid. Dr. Patrinely also testified there is a likelihood that the Plaintiff will develop complications in the future, such as, serious sinus infection, sagging of the eye socket,

10

and post-traumatic fibrosis around the reconstructed tear duct. Finally, Dr. Patrinely also testified that should Plaintiff develop a serious sinus infection, surgery may be required to remove the implant placed in the orbit of her eye socket. If such a surgery is required, such a procedure would cost from $7,000.00 to $15,000.00.

Dr. Michael Lambert testified as to the risk of injury to the Plaintiff's left eye. Dr. Lambert testified that the Plaintiff runs a greater risk of injury to her left eye, and that she may develop recession glaucoma. Should she develop recession glaucoma, the estimated cost of an operation is approximately $10,000.00. We find no manifest error and the jury was not clearly wrong in its general and special damage award to Plaintiff.

### DECREE

For the foregoing reasons, the jury verdict is affirmed in its entirety. Costs of this appeal are assessed against the Defendant, the State of Louisiana through its Board of Trustees for State Colleges and Universities through McNeese State University.

**AFFIRMED.**